881 P.2d 1150

In the Matter of a Member of the State Bar of Arizona, Michael S. MANNING, Bar No. 006637, Respondent.

No. SB–94–0068–D.

Comm. Nos. 92–1692, 92–1912, 92–1932, 92–1983, 92–2029 and 92–2048.

Supreme Court of Arizona.

Sept. 23, 1994.

Michael B. Scott, Phoenix, for respondent.

Allen B. Shayo, State Bar Counsel, and Harriet L. Turney, Chief Bar Counsel, State Bar of Arizona, Phoenix, for the State Bar.

### JUDGMENT AND ORDER

This matter having come on for hearing before the Disciplinary Commission of the Supreme Court of Arizona, it having duly rendered its decision and no timely appeal therefrom having been filed, and the Court having declined sua sponte review,

IT IS ORDERED, ADJUDGED AND DECREED that **MICHAEL S. MANNING,** a member of the State Bar of Arizona, is hereby suspended from the practice of law for a period of four years for conduct in violation of his duties and obligations as a lawyer, as disclosed in the commission report attached hereto as Exhibit A.

IT IS FURTHER ORDERED that pursuant to Rule 63(a), Rules of the Supreme Court of Arizona, **MICHAEL S. MANNING** shall notify all of his clients, within ten (10) days from the date hereof, of his inability to continue to represent them and that they should promptly retain new counsel, and shall promptly inform this court of his compliance with this Order as provided by Rule 63(d), Rules of the Supreme Court of Arizona.

IT IS FURTHER ORDERED that **MICHAEL S. MANNING** shall pay the costs of these proceedings in the amount of $1,823.61, together with interest at the legal rate from the date of this judgment.

### EXHIBIT A

### BEFORE THE DISCIPLINARY COMMISSION OF THE SUPREME COURT OF ARIZONA

Comm. Nos. 92–1692, 92–1912, 92–1932, 92–1983, 92–2029, 92–2048

In the Matter of

MICHAEL S. MANNING, Attorney No. 006637 a Member of the State Bar of Arizona,

RESPONDENT.

DISCIPLINARY COMMISSION REPORT

[Filed June 28, 1994.]

This matter came before the Disciplinary Commission of the Supreme Court of Arizona on May 6, 1994, for oral argument, pursuant to Rule 53(d), Ariz.R.S.Ct. The Commission

considered the Hearing Officer's recommendation of suspension. The respondent filed an objection to the Hearing Officer's recommendation.

### Decision

The Commission, with five members concurring and three dissenting,[1] adopts the recommendation of the Hearing Officer that the respondent, Michael S. Manning ("Manning"), be suspended for a period of four years. The Commission unanimously adopts the findings of fact and conclusions of law of the Hearing Officer.

### Facts

Manning was admitted to the State Bar of Arizona in 1979. In April 1991, he was suspended for failing to pay his bar dues and failing to comply with mandatory continuing legal education requirements. On July 19, 1993, Manning demonstrated compliance with the MCLE requirements, and was reinstated as to MCLE. On August 2, 1993, Manning was fully reinstated following his compliance with the dues requirements.

The initial complaint in this matter was filed July 26, 1993. A first amended complaint, which included two additional counts, was filed December 22, 1993. That complaint addressed Manning's mishandling of the cases of six clients who retained him from 1989 to 1992. Manning's actions were virtually identical with each of the six clients. He accepted retainers to handle the clients' cases, then failed to file anything with the court on the clients' behalf, all the while assuring the clients that their cases were progressing smoothly. Manning told none of the clients when he was suspended from the practice of law; in fact, three of the clients retained Manning after he was suspended.

In one case, a client became concerned about the progress of his bankruptcy case when he began receiving calls from creditors. In response, Manning assured the client that he had filed the bankruptcy proceeding, and gave the client a docket number which turned out to be false. The client subsequently learned from his creditors and his own inquiries of the bankruptcy court that Manning had never filed anything on his behalf.

When Manning closed his office in August 1992, he informed three of these six clients, without warning, that he was no longer practicing, suggesting to two of those three that they retain other counsel. He apparently never notified the other three clients that he had closed down his office.

Manning refunded the retainers he received from the six clients only after the formal complaints were filed. The four clients who were the subject of the initial complaint received their refund two months after the initial complaint was filed; the two clients whose cases were added in the first amended complaint received the refund of their retainer one month after that complaint was filed.

The State Bar's inquiries into these matters were sent, pursuant to Rule 55(b)(6), to Manning's address of record with the State Bar's Membership Records department. However, at that time Manning's address of record was no longer correct. As such, Manning never actually received the inquiries and, therefore, did not respond. The State Bar did not allege that Manning violated Rule 31(c)(3), which requires that all members shall provide the State Bar with a current address and telephone number. Instead, it alleged only a violation of ER 8.1(b), which involves a respondent's "knowing" failure to respond to the State Bar's inquiries. As Manning never received the complaints from the State Bar, his failure to respond was not a "knowing" failure. As such, the Hearing Officer found no violation of ER 8.1(b).

The Hearing Officer found that Manning violated ER 1.3, lack of diligence; ER 1.4, failure to maintain adequate communication; ER 3.2, failure to expedite litigation; ER 5.5, unauthorized practice of law; ER 8.4(c), con-

---

1. Commissioner Greer did not participate in these proceedings. Commissioners Bossé, Rubin, and Swick dissented, believing that suspension is insufficient for practicing law while suspended and that the mitigating factors present are insufficient to warrant any sanction less than disbarment. For further comments, see *Dissenters' Comments*, below.

duct involving dishonesty, fraud, deceit, or misrepresentation; Supreme Court Rule 51(f), violation of a disciplinary rule or order; and Rule 63(a), failure to notify clients of his suspension. He also found violations of Rule 51(h), failure to furnish information or respond promptly to any inquiry; and Rule 51(i), evading service or failure to cooperate with the State Bar's investigation.[2]

The State Bar and Manning stipulated to the above-described facts in this matter.

## Discussion of Decision

The Commission agrees that Respondent violated ER 1.3, ER 1.4, ER 3.2, ER 5.5, ER 8.4(c), and Supreme Court Rules 51(f), (h), (i), and 63(a). The Commission also agrees with the Hearing Officer that violations of ER 1.5 and ER 8.1(b) were not established by clear and convincing evidence.[3]

The American Bar Association's *Standards for Imposing Lawyer Sanctions* (the "*Standards*") are used by the Court in considering the appropriate sanction for a violation of the Rules of Professional Conduct. *In re Ockrassa*, 165 Ariz. 576, 799 P.2d 1350 (1990). The Commission reviewed this guideline, as well, in making its determination.

Standard 4.42 provides for suspension when a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client. Standard 4.41 provides for disbarment when a lawyer abandons the practice, knowingly fails to perform services for a client, or engages in a pattern of neglect with respect to client matters, and the resulting injury or potential injury is serious. It is clear that Manning's failure to perform the services for which he was retained, and paid, was done knowingly. It is also clear that he abandoned his practice and engaged in a pattern of neglect. The potential for injury is equally clear, although the Commission is unable, from the record on appeal, to determine whether that potential injury was serious. Therefore, according to Standard 4.4, Manning's conduct warrants either suspension or disbarment.

Both Standard 4.6 and 5.1 apply to a lawyer who lies to a client. Standard 4.62 provides for suspension when a lawyer knowingly deceives a client, and causes injury or potential injury to the client. Standard 5.13 provides for reprimand (censure in Arizona) when a lawyer knowingly engages in conduct that involves dishonesty, fraud, deceit, or misrepresentation and that adversely reflects on the lawyer's fitness to practice law. Standard 5.11 provides for disbarment when such conduct seriously adversely reflects on the lawyer's fitness to practice. As the Commentary to Standard 5.11 states, one of the most basic professional obligations a lawyer owes to the public is the pledge to maintain honesty and integrity. Manning informed his clients that their cases had been filed, although he was well aware that he had, in fact, filed nothing on their behalf. Manning also deceived his clients by failing to inform them of his suspension, and by accepting new clients after being placed on suspension. The Commission believes censure is inappropriate for such deceit; again, either suspension or disbarment is warranted.

In addition to the duties lawyers owe to clients and the general public, lawyers have duties as professionals. Standard 7.0 addresses violations of these duties, one of which is to avoid the unauthorized practice of law. Standard 7.2 provides for suspension when a lawyer knowingly engages in conduct that is a violation of one of these duties, and causes injury or potential injury to a client, the public, or the legal system. Standard 7.1

---

2. Although the Hearing Officer found that Manning had not *knowingly* failed to cooperate with the State Bar's investigation, and therefore did not violate ER 8.1(b), the Hearing Officer notes that Supreme Court Rules 51(h) and (i), which also address failure to cooperate, do not require the "knowing" element. Therefore, he found that Manning violated Rule 51(h) and (i).

3. Manning was on suspension during the period when he failed to provide the State Bar with his correct address. In finding that Manning violated Rule 51(h) and (i), the Commission concurs with the Hearing Officer's conclusion that Rule 31(c)(3)'s requirement that "all members" provide the State Bar with a current address and telephone number applies to suspended members, as well as practicing members. This finding is supported by Rule 31(c)(1), which specifically states that suspended members are one of the classes of members of the State Bar.

provides for disbarment when the lawyer knowingly violates one of these duties with the intent to obtain a benefit for the lawyer or another, and the resulting injury or potential injury is serious. Manning knowingly continued to represent his clients after he was suspended from the practice of law, and even accepted representation of three clients after his suspension. He never informed any of the clients of the suspension. The Commission can only conclude that these acts were done for Manning's own benefit, making disbarment the likely outcome under this Standard.

When each violation is viewed individually, the *Standards* indicate either suspension or disbarment is appropriate for Manning's misconduct. However, there are additional factors to be considered, including proportionality and any aggravating or mitigating factors which may be present.

Aggravating and mitigating factors are listed in Standards 9.22 and 9.23, respectively, and their presence may justify an increase or decrease in the degree of discipline to be imposed. The ultimate sanction imposed depends on the presence of any of these factors.[4] Those factors present in the instant matter are fairly evenly balanced. In aggravation, Manning had a dishonest or selfish motive; he had substantial experience in the practice of law, having practiced for nearly ten years when the misconduct occurred; and the multiple offenses involved created a pattern of misconduct. In mitigation, Manning has exhibited remorse and, once he became aware of the disciplinary proceedings, he was totally cooperative and made full and free disclosure throughout the proceedings; in fact, the State Bar stated that Manning "could not have been any more candid with respect to his misconduct," and acknowledges Manning's "absolute and complete cooperation throughout this proceeding."[5]

Although Manning urged that additional factors be considered in mitigation, the Commission agrees with the Hearing Officer that no additional factors apply. Manning testified as to the personal and emotional problems created by his divorce, which was in progress at the time the misconduct occurred. The Commission, however, finds this evidence to be vague, at best, and does not find it sufficient to be considered in mitigation. The Commission also agrees with the Hearing Officer's finding that the restitution made by Manning after the formal complaints were filed is neither mitigating nor aggravating.[6]

Aggravation and mitigation appearing to balance, the Commission next reviewed prior decisions of the Court concerning similar violations. As the Court has stated, it is appropriate to examine sanctions in factually similar cases; such proportionality considerations create confidence in our self-policing system.[7] Although conduct involving similar behavior has, in the past, sometimes resulted in disbarment, a review of those disbarment cases shows that additional misconduct was present in each. The Commission notes two cases here.

In *In re Elowitz*, 177 Ariz. 240, 866 P.2d 1326 (1994), the respondent accepted representation of numerous clients, then failed to diligently or competently handle their cases and failed to maintain adequate communication with the clients. He also failed to cooperate with the State Bar's investigations. However, this was not the extent of Elowitz's misconduct. Elowitz also failed to adequately safeguard a client's property, failed to return any portion of one client's retainer, failed to deal appropriately with funds received on behalf of one client's estate, charged one client an unreasonable fee, and made factual misrepresentations in a motion filed with the court. Elowitz also made misrepresentations to the State Bar during the disciplinary proceedings, and signed his clients' and secretary's names on documents and then used his secretary's notary seal to notarize the falsified signatures. Finally, Elowitz advised his secretary, just prior to

---

4. *Standards,* Theoretical Framework, p. 6.

5. State Bar's Post–Hearing Memorandum, pp. 8–9.

6. *See* Standard 9.4(a).

7. *In re Pappas,* 159 Ariz. 516, 526, 768 P.2d 1161 (1988).

her deposition, that these actions were not improper, which apparently induced her to testify falsely at her deposition. Although Elowitz did not practice law while suspended, his misconduct was clearly more widespread than Manning's and caused more serious financial, legal, and emotional harm.

*In re MacAskill,* 163 Ariz. 354, 788 P.2d 87 (1990), also bears much resemblance to the instant matter. Respondent MacAskill continued to practice law for more than a year after being suspended for non-payment of dues; he neglected clients' cases, then reassured the clients that everything had been filed; he failed to contact or respond to clients and failed to return client's files and the unused portion of their retainers; and he failed to cooperate with the State Bar's investigations. At first glance, it appears this case is directly on point. However, respondent MacAskill had a prior disciplinary record.[8] In addition, respondent MacAskill's failure to cooperate with the State Bar was intentional. He testified that he knew of the letters and inquiries, but simply ignored them. Manning's failure to cooperate with the State Bar, on the other hand, was inadvertent, as he never received the State Bar's letters and was unaware of the proceedings. While the Commission agrees that no one but Manning, himself, is to blame for failing to provide the State Bar Membership Records department with his correct address, it recognizes that his failure to cooperate was not done with the intent to avoid or disregard the disciplinary system. Conversely, the serious and deliberate disregard for the disciplinary system exhibited by MacAskill evinces a contempt for the system that is completely absent in the instant matter. Finally, MacAskill's misconduct differs from that of Manning in another critical way. MacAskill's clients suffered financial loss as a result of MacAskill's mishandling of their cases. Manning, however, fully refunded the retainers of each client, and no evidence was presented, nor was the allegation ever made,

that his clients suffered financial loss as a result of his misconduct.

Another case involving the unauthorized practice of law, *In re Gottesman,* 172 Ariz. 121, 834 P.2d 1266 (1992), involved the reciprocal discipline of an Arizona respondent who was admitted to the New Jersey bar, as well. Respondent Gottesman was censured for aiding the unauthorized practice of law and dividing fees with a non-lawyer in the course of his New Jersey practice. In that matter, the Commission adopted the sanction imposed on the respondent by the New Jersey Supreme Court. The Commission had the right, under Rule 58(c), to modify the sanction imposed in New Jersey, should it determine that the misconduct would warrant substantially different discipline in Arizona. The Commission, however, did not find Gottesman's conduct would warrant a sanction substantially different than censure in Arizona, and declined to alter the sanction.

The Commission believes the *Standards* indicate that disbarment is the appropriate sanction in this matter. However, the majority finds that a proportionality review suggests otherwise. The cases cited above that resulted in disbarment, while including virtually identical misconduct to that found here, also involved misrepresentations made to the Court and the State Bar, intentional failure to cooperate with the disciplinary proceedings, financial loss to clients, and forgery of the names of clients and a secretary—people who had placed their trust in the respondent. The instant case contains nothing even remotely similar to this behavior. The Commission believes that practicing law while on suspension is, in itself, egregious conduct. Nevertheless, the majority believes that, in this instance, it does not rise to the level of deliberate misconduct found in *Elowitz* or *MacAskill.*

The majority of the Commission, giving great deference to the Hearing Officer, finds that a four year suspension is appropriate in this matter, and so recommends.

8. Manning was censured, for similar conduct, one day after the Hearing Officer wrote his report in this matter. As such, the Hearing Officer did not consider any prior discipline in making his recommendation. Because of the timing of the censure, and because the conduct was simply "more of the same," the Commission did not find the prior to be helpful in determining the appropriate sanction.

*Dissenters' Comments*

Commissioners BOSSÉ, RUBIN, and SWICK dissent:

We dissent from the decision of the Disciplinary Commission; we would disbar the respondent. Although little significance attaches to the difference between a four-year suspension and a disbarment, except for the automatic requirement that the attorney, upon seeking readmission, take the bar exam, we believe a four-year suspension sends the wrong message regarding Manning's conduct and the position he advanced at oral argument before the Commission.

This discipline relates to practicing law, in a dishonest and unethical manner, while under a suspension for failing to pay dues and complete mandatory continuing legal education requirements. Manning disputed few of the material allegations offered against him. He offered no adequate mitigating circumstances in support of a sanction less than a substantial suspension.

Had Manning accepted a four-year suspension, we would have lived with the Hearing Committee's recommendation. However, Manning requested that the Commission treat as "time served" the period during which he was under suspension for failing to pay his bar dues and complete mandatory continuing legal education. Incredibly, Manning ignored the fact that these proceedings relate to the fact that he ignored that suspension. We can only liken his request to that of someone, convicted of escaping from prison, asking that he receive credit, against his sentence for escaping from prison, for the period while out on his frolic.

Manning has shown contempt for the Bar, for the Commission, and for these proceedings. We recommend disbarment and would urge that the State Bar, should it learn about any involvement by Manning with the practice of law which suggests a failure to abide by the ultimate order of the Supreme Court, institute criminal contempt proceedings.

RESPECTFULLY SUBMITTED this 28th day of June, 1994.

/s/ Steven L. Bossé
Steven L. Bossé, Chairman
Disciplinary Commission