**The PEOPLE of the State of Colorado, Complainant,**

v.

**Joffre M. JOHNSON, Attorney–Respondent.**

No. 97SA292.

Supreme Court of Colorado, En Banc.

Oct. 27, 1997.

Linda Donnelly, Disciplinary Counsel, Kenneth B. Pennywell, Assistant Disciplinary Counsel, Denver, for Complainant.

Jay P.K. Kenney, Denver, for Attorney–Respondent.

PER CURIAM.

An inquiry panel of the supreme court grievance committee approved a stipulation, agreement, and conditional misconduct between the respondent and the assistant disciplinary counsel. *See* C.R.C.P. 241.18. The conditional admission recommended that the respondent be suspended from the practice of law in a range from six months to two years. In approving the conditional admission, the panel recommended an eighteen-month suspension. We accept the conditional admission and the inquiry panel's recommendation of suspension for eighteen months along with special conditions for reinstatement.

### I

The respondent has been licensed to practice law in Colorado since 1969. The conditional admission provides as follows.

### A. The Casias Matter

Veronica Casias contacted the respondent in early 1994 regarding her nephew who was in Nevada social service custody as an unsupervised juvenile. Ms. Casias and her father had a previous relationship with the respondent whereby the respondent worked for them at highly reduced fees, billing only modest amounts intended to cover his overhead expenses. The respondent spoke with the appropriate Nevada officials regarding the procedure for Casias to take custody of the minor and return with him to Colorado. The nephew was subsequently transferred to Colorado and placed in Casias's home on July 14, 1994.

Casias went to the respondent's office on July 20, 1994, for assistance in filling out forms she had acquired to establish guardianship over her nephew so she could obtain health insurance coverage for him through her employer. The respondent suggested that it would be better for him to generate

the petition in his office. Casias agreed and she hired the respondent to prepare the guardianship petition. She paid him $200, which the respondent estimated would cover his earlier work on the case and the preparation of the necessary documents.

The respondent then failed to file a guardianship petition, did not respond to her numerous telephone calls about the case, and has not refunded her money. His conduct thereby violated Colo. RPC 1.3 (neglecting a legal matter); Colo. RPC 1.4(a) (failing to keep a client reasonably informed about the status of a matter); Colo. RPC 1.5(a) (charging an unreasonable fee); and Colo. RPC 1.15(b) (failing to promptly deliver to a client the funds the client is entitled to receive).

## B. The Rawson Matter

In the summer of 1992, Kevin and Patricia Rawson retained the respondent to file an action against their tax preparer, alleging that his negligence caused them to be liable for approximately $18,000 in additional taxes and penalties. The Rawsons paid the respondent a $3,000 "non-refundable" investigation fee to investigate whether their claim had merit. If it was determined that their claim was viable, the respondent was to apply the $3,000 against court costs and any recovery, pursuant to a contingent fee contract of thirty-three and one-third percent. The Rawsons never executed the contingent fee contract, however.

Following an investigation, the respondent agreed to represent the Rawsons. Filing of the tax malpractice action was initially delayed until the Rawsons obtained a Chapter 7 bankruptcy discharge in March 1993. The respondent filed the complaint in district court in October 1993. Although he did not file an answer to the defendants' counterclaim, the opposing lawyer did not move for a default.

Beginning in February 1994, the Rawsons were unable to reach the respondent by telephone. When they did meet with him in March 1994, he refused to refund their $3,000, but he did agree to proceed promptly with the case. The case was set for trial on October 18, 1994. When the respondent did not return their telephone calls, or reply to

their certified letter in July 1994 demanding a status report in ten days, the Rawsons filed a request for investigation on August 1, 1994.

Believing that it was improper for him to communicate further with the Rawsons, the respondent stipulated to a continuance in the tax malpractice case without their knowledge or consent. The respondent now admits that his silence was not an appropriate way to deal with the conflict and that he instead should have moved immediately to withdraw. He also failed to advise them of an offer to settle that he received from opposing counsel. In any event, he filed a motion to withdraw on July 27, 1995, which was granted over the Rawsons' objection on September 18. The Rawsons subsequently settled the case with the assistance of another lawyer.

The respondent has stipulated that his conduct in the Rawson matter violated DR 2-106(A) (entering into an agreement for, charging, or collecting an illegal or clearly excessive fee). After January 1, 1993, the effective date of the Rules of Professional Conduct, he violated Colo. RPC 1.3 (neglecting a legal matter); Colo. RPC 1.4(a) (failing to keep a client reasonably informed about the status of a matter); Colo. RPC 1.16(a)(1) (failing to withdraw from the representation of a client if the representation will result in violation of the rules of professional conduct); and Colo. RPC 1.16(d) (failing to take reasonable steps to protect a client's interests upon termination of representation).

## C. The Scofield Matter

On August 16, 1994, Jerald D. Scofield hired the respondent for advice regarding a child abuse investigation involving Scofield's three-year-old son and visitation issues raised by the investigation. The boy was conceived after Scofield's marriage with the mother had been dissolved.

The respondent filed an action for the determination of a parent-child relationship between Scofield and the boy. On September 27, 1994, Scofield's ex-wife filed a response admitting paternity, conceding that Scofield was entitled to parenting time, and asking for child support.

On November 19, 1994, after he could not get the respondent to return his telephone calls about the status of his case, Scofield hired another lawyer. The same day, Scofield faxed the respondent a letter firing him and requesting a refund of his unused advance fee, which according to the respondent's last billing, amounted to $902. After repeated requests by Scofield's new lawyer, the respondent finally provided an accounting of his services dated December 7, 1994. The statement indicated a credit balance of $302 due to Scofield, including one hour of the respondent's time spent after he had been discharged. Scofield filed a request for investigation against the respondent in late December.

The respondent did not send Scofield his refund because he believed that it was improper to communicate with his ex-client after the request for investigation had been filed. At the suggestion of investigative counsel, however, the respondent sent a check in the amount of $302 to Scofield on May 7, 1995. The Scofields settled the custody and visitation issues by stipulation in January 1995.

As he has admitted, the foregoing conduct violated Colo. RPC 1.4(a) (failing to keep a client reasonably informed about the status of a matter); Colo. RPC 1.5(a) (charging an unreasonable fee); and Colo. RPC 1.16(d) (failing to refund unearned fees upon termination of representation).

### D. Administrative Suspension

The respondent was suspended from the practice of law on May 11, 1995, pursuant to C.R.C.P. 260.6(10), for failing to comply with mandatory continuing legal education (CLE) requirements. He was reinstated on June 21, 1995. During the time he was suspended, he practiced law by meeting with current and prospective clients, attended two court hearings, and filed entries of appearance, documents, responses, and pleadings in numerous cases. He also failed to file an affidavit with this court following his suspension as required by C.R.C.P. 241.21(d), and he did not provide clients, or other parties in pending litigation, the notice required by C.R.C.P. 241.21(b) and (c). We have applied C.R.C.P. 241.21 to administrative CLE suspensions in cases involving conditional admissions like this one or other uncontested cases. *See, e.g., People v. Dover,* 944 P.2d 80, 82 (Colo. 1997) (conditional admission); *People v. Fager,* 938 P.2d 138, 139 (Colo.1997) (allegations in complaint deemed admitted by lawyer's default); *People v. Rivers,* 933 P.2d 6, 8 (Colo.1997) (no exceptions filed to hearing panel's findings).

C.R.C.P. 241.21 (dealing with "Required Action After Disbarment, Suspension, or Transfer to Disability Inactive Status") is not limited by its terms to disciplinary suspensions. The rule governing suspension following noncompliance with CLE requirements, C.R.C.P. 260.6(10), and the rule governing the actions a lawyer is required to take following suspension, C.R.C.P. 241.21, are contained in the same chapter of the Colorado Rules of Civil Procedure, Chapter 20 (entitled "Colorado Rules of Procedure Regarding Lawyer Discipline and Disability Proceedings *and Mandatory Continuing Legal Education* and Judicial Education") (emphasis added).

A lawyer who has been suspended for failure to comply with CLE requirements is no more allowed to practice law than one who is suspended following a disciplinary proceeding. A lawyer suspended for non-compliance with CLE requirements must notify clients and other parties of that lawyer's suspension and is forbidden to add new clients. To ensure the lawyer's compliance with the order of suspension, he or she must file the affidavit required by C.R.C.P. 241.21(d).

The respondent in this case violated C.R.C.P. 241.21(a)-(d), as well as Colo. RPC 5.5(a) (practicing law in violation of the rules of the legal profession); Colo. RPC 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation); Colo. RPC 8.4(d) (engaging in conduct prejudicial to the administration of justice); and Colo. RPC 8.4(h) (engaging in conduct adversely reflecting on the lawyer's fitness to practice).

### E. Commingling

In three separate instances between September and November 1994, the respondent

placed unearned attorney fees directly into his operating account rather than into his trust account. The conditional admission indicates that none of the clients were deprived of their funds because the respondent either eventually earned the fees or the unearned portion was placed in his trust account. Nevertheless, the respondent's conduct violated Colo. RPC 1.15(a) (failing to segregate client funds from the lawyer's own funds); and Colo. RPC 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).

## II

In the conditional admission, the respondent consents to discipline in the range of a six-month to two-year suspension. The inquiry panel recommended an eighteen-month suspension. The complainant recommends a two-year suspension and the respondent a six-month suspension.

According to the ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) (ABA *Standards*), some period of suspension is warranted in a case like this. *See* ABA *Standards* 4.42 ("Suspension is generally appropriate when: (a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or (b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client."); and *id.* at 6.22 ("Suspension is appropriate when a lawyer knowingly violates a court order or rule, and there is injury or potential injury to a client or a party, or interference or potential interference with a legal proceeding."). Although the complainant states that no actual harm to any of the respondent's clients was shown by virtue of his practicing law while suspended, the potential for harm or interference with the proceedings in which the respondent appeared certainly existed. *See People v. Dover*, 944 P.2d at 82 (Colo.1997).

We have said that "[d]isbarment would be appropriate had ... actual harm been shown." *People v. Kargol*, 854 P.2d 1267, 1269 (Colo.1993). Kargol was suspended for one year and one day for appearing as counsel of record in at least thirteen court proceedings after being suspended for failing to

satisfy mandatory CLE requirements. *Id.* at 1268. As in this case, no actual harm was shown. *Id.* at 1269. This case is more serious than *Dover*, in which we imposed a public censure, both in the number of affected clients and in the fact that the respondent did not notify any of the clients or parties that he was suspended. *Cf. Dover*, 944 P.2d at 82. On the other hand, the respondent's conduct is not as aggravated as in *Kargol* because Kargol continued to practice law while suspended after being warned by the Office of Disciplinary Counsel and even after being charged with practicing law while suspended. *See Kargol*, 854 P.2d at 1269.

The pattern of misconduct and multiple offenses in this case are aggravating factors for the purpose of imposing discipline. *See* ABA *Standards* 9.22(c), (d). The respondent also has a history of discipline. *See id.* at 9.22(a). He received a private censure in 1979, and admonitions in 1991 and 1993. The complainant also asserts the existence of the following additional factors in aggravation: the presence of a dishonest or selfish motive, *see id.* at 9.22(b); vulnerability of the victim, *see id.* at 9.22(h); and substantial experience in the practice of law, *see id.* at 9.22(i).

In mitigation, the complainant notes that the respondent has demonstrated remorse for his misconduct. *See id.* at 9.32(*l*). By executing the conditional admission he has also cooperated in these proceedings. *See id.* at 9.32(e).

The extent of the misconduct in this case requires a longer rather than shorter period of suspension, and we believe that it is also necessary that the respondent file a petition for reinstatement. We conclude that the inquiry panel's recommendation of suspension for eighteen months represents a reasonable balancing of the seriousness of the misconduct in light of the aggravating and mitigating factors. Accordingly, we accept the conditional admission and the inquiry panel's recommendation.

## III

Accordingly, it is hereby ordered that Joffre M. Johnson be suspended from the practice of law for eighteen months, effective

thirty days after this opinion is issued. Prior to reinstatement, and as a condition for reinstatement, the respondent is required to make restitution to Veronica Casias in the amount of $200 plus statutory interest from July 20, 1994; and to Jerald Scofield in the amount of $150 plus statutory interest from November 19, 1994. The respondent is also ordered to pay the costs of this proceeding in the amount of $796.25 within thirty days of the date on this decision to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 920–S, Denver, Colorado 80202. The respondent shall not be reinstated until he has complied with C.R.C.P. 241.22(b)-(d).