The PEOPLE of the State Of Colorado, Complainant,

v.

**Joffre M. JOHNSON, Respondent.**

**Nos. GC98C92, GC98C115, 99PDJ001.**

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

Sept. 13, 1999.

Opinion by Presiding Disciplinary Judge ROGER L. KEITHLEY and Hearing board members, HENRY C. FREY and BRUCE W. SATTLER, both members of the board.

## OPINION AND ORDER IMPOSING SANCTIONS

### *SANCTION IMPOSED: ATTORNEY DISBARRED*

This consolidated disciplinary matter was heard on June 15, 1999 before the Presiding Disciplinary Judge ("PDJ") and two hearing board members, Henry C. Frey and Bruce W. Sattler, both members of the Bar. Assistant Regulation Counsel Josephine D. Luna represented the People of the State of Colorado ("the People") and the respondent, Joffre M. Johnson ("Johnson") did not appear, either in person or through counsel. The People's Exhibits 1 through 14 were admitted into evidence. The PDJ and Hearing Board heard testimony from the People's witnesses, Timothy Snyder and Cathy Valko.

Disciplinary actions GC98C92, GC98C115 and 99PDJ001 were consolidated by Order dated February 10, 1999. Johnson failed to submit an Answer to any of the three Complaints filed in these actions. By Order dated February 23, 1999 default was entered against Johnson in each of the disciplinary actions. Consequently, the allegations of fact contained in the complaints were deemed admitted. *In the Matter of Michael F. Scott,* 979 P.2d 572, 573 (Colo.1999); *People v. Pierson,* 917 P.2d 275, 275 (Colo.1996); C.R.C.P. 251.15(b).

### *I. FINDINGS OF FACT*

The PDJ and Hearing Board considered the testimony and exhibits admitted, as-

sessed the credibility of the witnesses, and made the following findings of fact, which were established by clear and convincing evidence:

## A. GC98C92 – The Snyder Case

Johnson represented Timothy Snyder in his dissolution of marriage action commencing in 1991. After the issuance of the final decree, Snyder remarried. In 1995, Snyder's ex-wife placed a lien on real property owned by Snyder's new wife. Snyder and his new wife retained Johnson to pursue a slander of title claim in order to obtain a release of the lien. In the course of that representation, Johnson requested that Snyder lend him $4,000 and offered to pledge his accounts receivable as security. Snyder agreed to lend the money to Johnson. Johnson neither advised Snyder to seek advice from independent counsel regarding the loan, nor obtained written consent regarding the loan from Snyder. Johnson signed a promissory note secured by his accounts receivable in February 1997 agreeing to repay the loan in six months. In August 1997 when the loan became due, Johnson did not repay it. Thereafter, Snyder was unable to reach Johnson by phone and Johnson did not return messages. Snyder retained substitute counsel to conclude the slander of title action and to pursue collection of the Johnson note.

Johnson ultimately entered into a stipulation with Snyder to settle the collection action. He confessed judgment in the amount of $5,353.25 and agreed to pay $500 per month toward the indebtedness. Johnson made two payments under the stipulation and then discharged the obligation in bankruptcy.

## B. GC98C115 – The Mann Case

Johnson represented Donna Mann in her dissolution of marriage action commencing in 1996 in Jefferson County. On or about October 15, 1997, a stipulation for permanent orders was filed in the dissolution action. On October 16, 1997 the court entered the decree of dissolution and adopted the stipulation as the court's permanent orders.

On October 27, 1997 the Colorado Supreme Court entered an Order suspending Johnson from the practice of law for a period of eighteen months. *People v. Johnson,* 946 P.2d 469 (Colo.1997). Johnson failed to notify opposing counsel in the Mann dissolution case of his suspension by certified mail as required by C.R.C.P. 241.21(b), and failed to withdraw from the case. Additional documentation remained to be prepared in the domestic relations case at the time of Johnson's suspension.

## C. 99PDJ001—The Valko Matter

Johnson was retained by Joe Valko and Cathy Flavin to assist in the preparation of their wills and to effectuate a name change for Cathy Flavin to Cathy Valko. Although Joe Valko and Cathy Flavin had lived together for fourteen years, Mr. Valko and Ms. Flavin had never formally married. The wills were prepared and executed and the name change accomplished. Mr. Valko's will provided a bequest to Ms. Valko of $75,000 and named her as co-personal representative.

On June 8, 1993 Mr. Valko died. In August 1993 Ms. Valko retained Johnson to handle the estate matters. Johnson filed the appropriate documentation with the court to commence the running of the period for filing of claims against the estate. In November 1993, during the claim submission period, Johnson requested a meeting with Ms. Valko. At the meeting, Johnson asked to borrow $25,000 from Ms. Valko. Johnson told Ms. Valko that he needed the money to pay bills and keep his practice going. Johnson did not advise Ms. Valko to seek other independent counsel regarding the proposed loan, nor did he obtain a written waiver for this business transaction with his client. Johnson prepared a written agreement between himself and Ms. Valko reflecting the $25,000 loan.

About one month later, Johnson approached Ms. Valko again and asked to borrow another $25,000. She agreed to loan the funds. Johnson prepared new loan documentation combining the two loans and requiring a monthly payment of $779.31 including interest at 8% for 84 months. Johnson gave his accounts receivable as collateral for the loan. Payments were to begin January 10, 1994.

After making seven payments of $779.31, Johnson made one additional payment of $500.00 and then made no payments after August 10, 1994. Between 1994 and 1998 Ms. Valko had infrequent contact with Johnson. Johnson assured Ms. Valko that he intended to pay her back. In March 1998, Johnson told Ms. Valko that he had been suspended from the practice of law and was moving to Nevada but would stay in touch with her. Johnson told Ms. Valko not to tell anyone about the loan because it had to remain confidential between them.

Johnson had no further contact with Ms. Valko. Her attempts to contact him were unsuccessful. Due in part to Johnson's failure to repay the loans, Ms. Valko filed for personal bankruptcy in April 1998.

## II. CONCLUSIONS OF LAW

Johnson is subject to the jurisdiction of this court pursuant to C.R.C.P. 251.1(b). Johnson has taken and subscribed the oath of admission, was admitted to the bar of this court on April 16, 1969 and is registered upon the official records of the Supreme Court, registration number 02478.

### A. GC98C92—The Snyder Case

During the course of his representation of Timothy Snyder, Johnson entered into a business relationship with his client. Johnson did not inform Snyder that use of independent counsel may be advisable to assess the business transaction, did not adequately disclose the terms of the transaction in writing so as to allow the client to fully understand the business arrangement, and did not obtain a written consent to the transaction from his client. Each of these failures constituted a violation of The Colorado Rules of Professional Conduct ("Colo.RPC") 1.8(a). Specifically, the failure to advise Snyder to seek independent advice is a violation of Colo. RPC 1.8(a)(2), and the failure to obtain consent of the client in writing is a violation of Colo. RPC 1.8(a)(3). These failures, combined with Johnson's lack of availability to his client during the pendency of the slander of title action, his failure to maintain contact with his client and his failure to repay the loan, when viewed in their totality, constitut-

ed a violation of Colo. RPC 8.4(h)(other conduct that reflects adversely on the lawyer's fitness to practice law). *See People v. Egbune,* No. GC98A13 (Colo.P.D.J.1999), 28 COLO. LAW. 132 (Sept.1999). Johnson's misconduct resulted in harm to his client.

### B. GC98C115 – The Mann Matter

On October 27, 1997 the Colorado Supreme Court issued its opinion in *People v. Johnson,* 946 P.2d 469 (Colo.1997) which placed Johnson on suspension from the practice of law thirty days following the issuance of the opinion. Pursuant to C.R.C.P. 241.21(c), upon the entry of an order of suspension, a lawyer involved in litigation on behalf of a client must notify opposing counsel in writing by certified mail of the order entered against him and of his consequent inability to act as a lawyer after the effective date of the order. Johnson did not do so. His failure to properly notify opposing counsel of his suspension violates C.R.C.P. 241.21(c) and Colo. RPC 3.4(c)(knowingly disobeying an obligation under the rules of a tribunal).

At the time Johnson was suspended, he was counsel of record in the pending dissolution matter. Additional documentation had to be prepared in the case at the time of the suspension. Johnson failed to withdraw from that representation. Because additional legal services were required by Johnson as counsel of record after the issuance of the Supreme Court's order, his failure to withdraw constituted a violation of Colo. RPC 1.16(a)(1)(a lawyer shall withdraw if the representation will result in violation of the rules of professional conduct or other law). Johnson's misconduct in this matter also violated Colo. RPC 8.4(a)(violation of a rule of professional conduct).

### C. 99PDJ001 – The Valko Matter

Johnson entered into an attorney client relationship with both Joe Valko and Cathy Flavin. He prepared wills for both individuals and undertook the necessary legal work to effectuate a name change for Cathy Flavin to Cathy Valko. Shortly after Joe Valko's death in June 1993, Johnson was again retained by Cathy Valko, as co-personal repre-

sentative of Joe Valko's estate, to handle the necessary legal work to probate the estate of the deceased. Johnson prepared the necessary documentation for the estate in July and/or August 1993, listing himself as the attorney for the co-personal representative. Pursuant to § 15–12–803, 5 C.R.S. (1998), claims could be filed against the estate for a period of one year after the date of death. No evidence was offered that Johnson withdrew as attorney for the co-personal representative at any time following his entry into the probate matter. Ms. Valko considered Johnson to be her attorney during the pendency of the estate proceeding.

Notwithstanding his attorney-client relationship with Ms. Valko, Johnson obtained two loans totaling $50,000 from Ms. Valko during the pendency of the estate proceeding. Johnson was aware that Ms. Valko had received a bequest from the estate. Johnson neither advised Ms. Valko to seek independent advice concerning the loan, nor obtained her written consent to the loan. Such misconduct is specifically prohibited by Colo. RPC 1.8(a)(2)(entering into a business transaction with a client without advising the client to seek independent counsel), and Colo. RPC 1.8(a)(3)(entering into a business transaction with a client without obtaining written consent to the transaction).

In addition, Johnson gave his accounts receivable as security for the loans without informing Ms. Valko of the nature, quantity or enforceability of those receivables.[1] From 1994 through a portion of 1998, Johnson knowingly misled Ms. Valko into believing that he would repay the loan. Even after he was suspended from the practice of law in 1997, Johnson continued his deception of Ms. Valko by failing to promptly inform her of the suspension, failing to explain the impact of his suspension on the security for the loan, and by leading her to believe that he would maintain contact with her after his move to Nevada. Johnson's misconduct violated Colo. RPC 8.4(c)(engaging in conduct involving dishonesty, misrepresentation, fraud or deceit), and Colo. RPC 8.4(a)(violating a rule

of professional conduct). Moreover, the totality of the misconduct established by the evidence presented rises to the level of a violation of Colo. RPC 8.4(h)(other conduct adversely reflecting upon fitness to practice law). *People v. Egbune,* No. GC98A13 (Colo. P.D.J.1999), 28 COLO. LAW. 132 (Sept.1999).

### III. SANCTIONS/IMPOSITION OF DISCIPLINE

Both the ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992)("ABA *Standards*") and prior case law suggest that the presumptive sanction for Johnson's misconduct is disbarment.

ABA *Standards* 4.31 provides:

Disbarment is generally appropriate when a lawyer, without the informed consent of client(s):

(a) engages in representation of a client knowing that the lawyer's interests are adverse to the client's with the intent to benefit the lawyer or another, and causes serious or potentially serious injury to the client;

ABA *Standards* 4.61 provides:

Disbarment is generally appropriate when a lawyer knowingly deceives a client with the intent to benefit the lawyer or another, and causes serious injury or potential serious injury to a client.

In the Valko matter, Johnson's misconduct satisfies both ABA *Standards* 4.31 and 4.61. Although his misconduct in the Mann and Snyder cases may not rise to the level of misconduct requiring disbarment, Johnson's misconduct in the Valko matter, standing alone, and certainly in combination with the two other matters, dictates that disbarment is the only remedy which accurately reflects the seriousness of Johnson's violations.

Colorado case law also requires disbarment. *People v. Schindelar,* 845 P.2d 1146, 1149 (Colo.1993)(disbarring attorney for entering into prohibited loan transaction with vulnerable client, and for failing to disclose inadequacy of security for loans, to discuss

---

1. Johnson provided no information to Ms. Valko concerning the nature, quantity or enforceability

of the accounts receivable securing the loan.

inherent conflict of interest, or to provide client with appropriate legal documentation to ensure repayment); *People v. McMahill,* 782 P.2d 336, 338 (Colo.1989)(disbarring attorney for entering into business transaction with the client and engaging in dishonesty, deceit, and misrepresentation).

The PDJ and Hearing Board considered the following matters in aggravation pursuant to ABA *Standards* 9.2: Johnson engaged in a pattern of misconduct by engaging in business transactions with his clients without compliance with The Colorado Rules of Professional Conduct, *see id.* at 9.22(c); Johnson had substantial experience in the practice of law (more than ten years), *see id.* at 9.22(i); he demonstrated a dishonest and selfish motive, *see id.* at 9.22(b); the conduct at issue consisted of multiple offenses, *see id.* at 9.22(d); there were prior disciplinary offenses (an eighteen month suspension for similar misconduct), *see id.* at 9.22(a); Johnson demonstrated an indifference to making restitution, *see id.* at 9.22(j); the victim in this case was vulnerable (Ms. Valko), *see id.* at 9.22(h), and Johnson engaged in bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency, *see id.* at 9.22(e). The presence of substantial aggravating factors reinforce the PDJ and Hearing Board's conclusion that disbarment is required in this case.

Because Johnson did not appear at the sanctions hearing, no mitigating factors were presented to or considered by the PDJ and Hearing Board.

## IV. ORDER

It is therefore ORDERED:

1. Joffre M. Johnson is DISBARRED from the practice of law in the State of Colorado and his name shall be stricken from the role of attorneys effective October 14, 1999;

2. Joffre M. Johnson, as a condition of readmission, shall establish by clear and convincing evidence that he has paid restitution to Ms. Valko and Mr. Snyder, in an amount equal to the amount which would have been pay- able under the terms of the promissory notes;

3. Joffre M. Johnson shall pay the costs of these proceedings within 60 days of the date of this Order;

4. The People shall submit a Statement of Costs within ten (10) days of the date of this Order. Respondent shall have five (5) days thereafter to submit a response thereto.