### The PEOPLE of The State of Colorado, Complainant,

v.

### James C. RANDOLPH, Respondent.

### No. 13PDJ005.

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

Aug. 13, 2013.

---

1. The Panel's decision mistakenly referred to section 8-73-108(4)(*o*).

## OPINION AND DECISION IMPOSING SANCTIONS PURSUANT TO C.R.C.P. 251.19(c)

WILLIAM R. LUCERO, Presiding Disciplinary Judge.

On June 27, 2013, the Presiding Disciplinary Judge ("the Court") held a sanctions hearing pursuant to C.R.C.P. 251.15(b). Timothy J. O'Neill appeared on behalf of the Office of Attorney Regulation Counsel ("the People"), but James C. Randolph ("Respondent") did not appear. The Court now issues the following "Opinion and Decision Imposing Sanctions Pursuant to C.R.C.P. 251.19(c)."

## I. SUMMARY

On July 20, 2007, the Colorado Supreme Court suspended Respondent for failure to comply with continuing legal education ("CLE") requirements. While subject to that order, Respondent was placed on a concurrent administrative suspension on July 28, 2009, for failure to pay registration fees.

After Respondent paid those fees, the Colorado Supreme Court issued an order on February 23, 2010, lifting the suspension as to his fees but expressly stating that his 2007 suspension for CLE violations remained in effect. Respondent thereafter drafted estate documents for clients in violation of Colo. RPC 3.4(c), 5.5(a), and 8.1(b). Respondent's misconduct warrants disbarment.

## II. PROCEDURAL HISTORY

The People filed their complaint on January 17, 2013. Respondent failed to answer, and the Court granted the People's motion for default on April 22, 2013. Upon the entry of default, the Court deems all facts set forth in the complaint admitted and all rule violations established by clear and convincing evidence.[1] At the sanctions hearing on June 27, 2013, the People presented no witnesses, and the Court considered the People's exhibit 1.

## III. ESTABLISHED FACTS AND RULE VIOLATIONS

The Court hereby adopts and incorporates by reference the factual background of this case, as fully detailed in the admitted complaint.[2] Respondent took the oath of admission and was admitted to the bar of the Colorado Supreme Court on May 15, 1997, under attorney registration number 28084.[3] He is thus subject to the Court's jurisdiction in these disciplinary proceedings.[4]

On July 20, 2007, the Colorado Supreme Court suspended Respondent for failure to comply with CLE requirements. While he was subject to that order, Respondent was placed on a concurrent suspension on July 28, 2009, for failing to pay mandatory administrative fees. On February 23, 2010, Respondent paid the outstanding fees, and that same day the Colorado Supreme Court lifted the order of suspension as to his fees, while specifically stating that his 2007 suspension

---

1. See People v. Richards, 748 P.2d 341, 346 (Colo. 1987); C.R.C.P. 251.15(b).

2. See the People's complaint for further detailed findings of fact.

3. Respondent's registered business address is 9819 Townsville Circle, Highlands Ranch, Colorado 80130.

4. See C.R.C.P. 251.1(b).

for failure to comply with CLE requirements remained in effect.

Respondent remained suspended in 2012 during the time of his own marriage dissolution proceedings, in which he represented himself. On May 10, 2012, Respondent testified in Douglas County District Court during a temporary orders hearing; he was cross-examined regarding two separate invoices he had issued for legal services. Respondent testified as follows:

Q. You are currently under suspension, right?

A. Yes.

Q. And you are not to be doing legal work, correct?

A. That's correct.

Q. And yet the invoices from services in Exhibit C, you did some legal work under Randolph International Associates, correct?

A. That's correct.

Q. Okay, all the while knowing you are under suspension?

A. That's correct. I made the clients aware of my suspension at that time.

Q. Did you make Attorney Regulation Counsel aware of the fact that you have been practicing law while under suspension?

A. No, I have not.

The district court reviewed two invoices issued by Respondent for legal services. The first invoice was dated August 18, 2011, for client Nancy J. Johnson. This invoice showed that Respondent was paid a $1,000.00 flat fee for drafting estate documents in June and July 2011, including a living trust, a will, powers of attorney, a medical power of attorney, a living will, and a memorandum of personal property. It is unclear whether Respondent informed Johnson that he was not a licensed lawyer.

The second invoice was dated October 11, 2011, for clients Roy and Suzanne Carter. In this invoice, Respondent billed his clients $1,500.00 for drafting estate documents in June and August 2011, including a revocable living trust, wills, powers of attorney, medical powers of attorney, living wills, and a memorandum of personal property. Mr. Carter paid Respondent $1,500.00 for these services. Respondent did not tell Mr. Carter that he had been suspended from the practice of law.

On August 13, 2012, the People sent a letter by regular and certified mail to Respondent at his registered address, requesting a response regarding their investigation within twenty days. Respondent did not claim the certified mailing, but the other mailing was not returned. When Respondent failed to respond, the People sent him a second letter on September 7, 2012, asking for a response within ten days. Again, Respondent did not respond.

■ By drafting estate documents for clients while administratively suspended, Respondent knowingly violated Colo. RPC 3.4(c), which proscribes lawyers from knowingly disobeying an obligation under the rules of a tribunal. Through this same conduct, he also violated Colo. RPC 5.5(a), which prohibits attorneys from practicing law in the State of Colorado without a license. When he knowingly failed to respond to the People's requests for information during their investigation, Respondent also contravened Colo. RPC 8.1(b), which forbids attorneys from knowingly failing to respond to the People's demands for information.

## IV. SANCTIONS

■ The American Bar Association *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) ("ABA *Standards*") and Colorado Supreme Court case law guide the imposition of sanctions for lawyer misconduct.[5] In imposing a sanction after a finding of lawyer misconduct, the Court must consider the duty violated, the lawyer's mental state, and the actual or potential injury caused by the lawyer's misconduct. These three variables yield a presumptive sanction that may be adjusted in consideration of aggravating and mitigating factors.

### ABA *Standard* 3.0—Duty, Mental State, and Injury

■ *Duty:* By continuing to practice law in violation of the Colorado Supreme Court's

---

5. *See In re Roose,* 69 P.3d 43, 46–47 (Colo.2003).

order of administrative suspension and by failing to respond to the People's requests for information, Respondent violated duties he owed to the legal system and as a professional.

■ *Mental State:* The entry of default establishes that Respondent acted knowingly when he contravened the Colorado Supreme Court's order of administrative suspension—an order that is still in effect today—and when he refused to answer the People's demands for information. Furthermore, the Court is convinced that Respondent continued to practice law after his license had been suspended with the intent to gain a financial benefit; this intent is reflected by the significant fees he charged his clients.

■ *Injury:* By practicing law without a valid license, Respondent caused actual injury to the legal system and to the profession; the reputation of the legal system and the profession was diminished when he overtly disregarded Colorado Supreme Court rules and orders. Additionally, Respondent caused potential serious harm to the legal system and the Carters. His misconduct had the potential to seriously undermine the public's perception of the legal system; when attorneys refuse to abide by orders of the Colorado Supreme Court or the rules of the attorney regulatory system, their conduct erodes the public's confidence in the attorney regulatory system. Respondent's conduct also had the potential to injure his clients, in particular the Carters, who were unaware that Respondent's law license had been suspended. Mr. Carter paid for Respondent's legal services, likely believing he was a licensed attorney. Upon discovering Respondent was practicing without a valid license, the Carters may have felt compelled to retain another attorney to review their estate documents and determine whether the documents served the couple's estate planning needs.

### ABA *Standards* 4.0–7.0—Presumptive Sanction

Suspension is the presumptive sanction under ABA *Standard* 6.22 when an attorney knowingly violates a court order or rule, resulting in injury or potential injury to a client or a party. In contrast, ABA *Standard* 7.1 recommends disbarment where an attorney knowingly engages in conduct that is a violation of a duty owed as a professional with the intent to obtain a benefit for the attorney, thereby causing serious or potentially serious injury to a client, the public, or the legal system. Likewise, ABA *Standard* 8.1(b) calls for disbarment when an attorney has been suspended for the same or similar misconduct and knowingly engages in further acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession. In light of Respondent's prior suspension for similar misconduct, which is discussed below, the Court finds each of these standards applicable here.

### ABA *Standard* 9.0—Aggravating and Mitigating Factors

Aggravating circumstances include any considerations or factors that may justify an increase in the presumptive discipline to be imposed, while mitigating circumstances may justify a reduction in the severity of the sanction.[6] The Court considered evidence of the following aggravating circumstances in deciding the appropriate sanction. Because Respondent did not participate in these proceedings, the Court is unaware of any mitigating factors.

■ *Prior Disciplinary Offenses—9.22(a):* On January 30, 2004, Respondent was suspended for sixty days, all stayed pending successful completion of a one-year period of probation with conditions, for violating Colo. RPC 5.4(a) (sharing legal fees with non-lawyers) and 5.5(b) (employing disbarred, suspended, or disabled lawyers to represent a client). On May 18, 2007, Respondent was suspended for six months, all but thirty days stayed pending successful completion of a two-year period of probation, for violating two of the rules at issue in this matter—Colo. RPC 3.4(c) and 5.5(a). In that case, Respondent was found to have engaged in the unauthorized practice of law while under administrative suspension. The Court applies greater weight to Respondent's 2007

---

6. *See* ABA *Standards* 9.21 & 9.31.

offense because the misconduct here mirrors the misconduct in that case.

■ *Dishonest or Selfish Motive—9.22(b):* The Court finds that Respondent acted with a dishonest and selfish motive when he knowingly practiced law without a license and charged clients for services he was unauthorized to perform. Indeed, by agreeing to prepare legal documents for the Carters without notifying them of his suspension, Respondent misrepresented his status as an attorney.

■ *Pattern of Misconduct—9.22(c):* Respondent engaged in similar misconduct in two separate client matters during the same general timeframe, demonstrating an incipient pattern of misconduct.

*Multiple Offenses—9.22(d):* In this case, Respondent committed two separate types of offenses: he practiced law without a license in violation of an administrative suspension order, and he failed to answer the People's requests for information.

■ *Refusal to Acknowledge Wrongful Nature of Conduct—9.22(g):* The Court finds that Respondent refused to recognize the wrongful nature of his misconduct, as made evident by Respondent's casual indifference to his professional obligations in the testimony he gave in his dissolution proceedings. That testimony demonstrates Respondent's contemptuous attitude toward the many orders he received from the Colorado Supreme Court citing administrative requirements for lawyers.

*Substantial Experience in the Practice of Law—9.22(i):* Respondent was admitted to the bar in 1997 and is therefore considered an experienced practitioner.

## Analysis Under ABA *Standards* and Colorado Case Law

■ The Court is aware of the Colorado Supreme Court's directive to exercise discretion in imposing a sanction and to carefully apply aggravating and mitigating factors,[7] mindful that "individual circumstances make extremely problematic any meaningful comparison of discipline ultimately imposed in different cases."[8] Though prior cases are helpful by way of analogy, the Court is charged with determining the appropriate sanction for a lawyer's misconduct on a case-by-case basis.

■ In this case, ABA *Standards* 7.1 and 8.1(b) both militate in favor of disbarring Respondent. As noted above, ABA *Standard* 7.1 establishes disbarment as the presumptive sanction where an attorney knowingly engages in conduct that violates a duty to the profession with the intent to obtain a benefit, causing potentially serious injury to the public or the legal profession in the process. Although Respondent did not testify or otherwise participate in the disciplinary proceeding, the Court has no trouble concluding that he acted knowingly, with the intent to obtain a financial benefit for himself. Moreover, the overt nature of Respondent's unauthorized practice of law—which took place a full four years after he was suspended—warrants a finding that he caused potentially serious harm to the profession and that ABA *Standard* 7.1 should apply here.[9]

Likewise, ABA *Standard* 8.1(b) provides that disbarment is the presumed sanction when an attorney knowingly engages in the same or similar acts of misconduct for which the attorney has previously been suspended, resulting in potential injury to a client, the public, or the profession. Indeed, applied mechanically, ABA *Standard* 8.1(b) would

7. *See In re Attorney F.*, 285 P.3d 322, 327 (Colo. 2012); *In re Fischer*, 89 P.3d 817, 822 (Colo. 2004) (finding that a hearing board had overemphasized the presumptive sanction and undervalued the importance of mitigating factors in determining the needs of the public).

8. *In re Attorney F.*, 285 P.3d at 327 (quoting *People v. Rosen*, 198 P.3d 116, 121 (Colo.2008)).

9. *See Matter of Manning*, 180 Ariz. 45, 881 P.2d 1150, 1152–53 (1994) (concluding that a lawyer's decision to practice law while under suspension could only have been made for the lawyer's own benefit, and applying ABA *Standard* 7.1); *Matter of Tarletz*, 165 Ariz. 243, 798 P.2d 381, 383 (1990) (applying ABA *Standards* 7.1 and 8.1 when a lawyer practiced law despite her suspension for failing to pay dues).

call for disbarment nearly every time a suspended lawyer practices law after having received prior discipline for a similar incident, even though the Colorado Supreme Court often imposes less severe sanctions for violations of administrative suspension orders than for violations of disciplinary suspension orders.[10] But in some cases—for example, where a first violation of an administrative suspension order resulted in a fully stayed suspension—disbarment for a second instance of the same misconduct might represent a precipitous jump in the severity of discipline that could raise questions about proportionality in the sanctions process.

Although a close case, the Court follows here the direction provided by ABA *Standard* 8.1(b), given that there are six factors in aggravation and not a whit of evidence in mitigation. Further, Respondent's continued failure to follow the Colorado Supreme Court's rules governing attorney conduct calls into question whether he would honor any orders issued in an effort to rehabilitate him. As mentioned above, Respondent was suspended in May 2007 for six months, all but thirty days stayed pending probation, for practicing law while under an administrative suspension order. Yet little more than a month later, the Colorado Supreme Court issued an order of administrative suspension for Respondent's failure to comply with CLE requirements—an order that still remains in effect over six years later. Any sanction less than disbarment might well erode public confidence in the bar's self-regulatory process by sending a message that this Court will tolerate a lawyer's sustained disobedience of our governing rules.

This conclusion is supported by at least one comparable case decided by the Colorado Supreme Court, where disbarment was imposed upon application of ABA *Standard* 8.1(b). There, an attorney was suspended in 1991 for forty-five days because he failed to notify his client of a 1989 administrative suspension resulting from his noncompliance with CLE requirements.[11] He also accepted a retainer from a client while under that same suspension.[12] From 1989 to 1994, the attorney engaged in five instances of the unauthorized practice of law in violation of Colo. RPC 5.5(a), among other rule violations.[13] Because the attorney had previously been disciplined for continuing to practice law while under an administrative suspension, the Colorado Supreme Court applied ABA *Standard* 8.1(b) and disbarred the attorney.[14]

Finally, the Court notes that in cases involving multiple types of attorney misconduct, the ABA *Standards* counsel that the ultimate sanction should at least be consistent with the sanction for the most serious disciplinary violation and generally should be greater than the sanction for the most serious misconduct.[15]

In sum, Respondent flouted his duties to the legal profession by practicing law while

---

10. *Compare People v. Johnson*, 946 P.2d 469, 471 (Colo.1997) (suspending a lawyer for eighteen months after he violated an administrative suspension order and engaged in other misconduct) *and People v. Rivers*, 933 P.2d 6, 8 (Colo.1993) (suspending a lawyer for one year and one day for violating an administrative suspension order and engaging in other misconduct), *with People v. Zimmermann*, 960 P.2d 85, 88 (Colo.1998) (ruling that disbarment was appropriate where a lawyer violated a disciplinary suspension order and engaged in other misconduct, causing actual harm to clients).

11. *People v. Redman*, 902 P.2d 839, 839 (Colo. 1995).

12. *Id.*

13. *Id.* at 839–40.

14. *Id.* at 840. The Colorado Supreme Court has also disbarred attorneys in other cases for engaging in the same or similar misconduct. *See People v. Bottinelli*, 926 P.2d 553, 558 (Colo.1996) (applying ABA *Standard* 8.1(b) and disbarring an attorney who was previously suspended for six months for the same misconduct); *People v. Regan*, 871 P.2d 1184, 1188 (Colo.1994) (treating an attorney's previous suspension as a pattern of misconduct because his current disciplinary violations occurred during same time period, but noting that "[h]ad the respondent engaged in the instant misconduct after being disciplined in 1992, there would be no question that disbarment would be appropriate" under ABA *Standard* 8.1(b)); *People v. Dolan*, 873 P.2d 766, 768–69 (Colo.1994) (applying ABA *Standard* 8.1(b) and disbarring an attorney who had a history of similar discipline).

15. ABA *Standards* § 2 at 7.

under an administrative suspension. Much worse, however, his misconduct represented the second instance of similar behavior, as he was suspended in 2007 with no apparent effect upon his later actions. To the contrary, he testified under oath (but rather dismissively) that he had engaged in the unauthorized practice of law by representing Johnson and the Carters, even though he knew he had been administratively suspended for over four years. Accordingly, this misconduct, coupled with the numerous aggravating factors and absence of any mitigating factors, warrants disbarment.

## V. *CONCLUSION*

Respondent violated duties he owed to the legal system and to the legal profession by knowingly violating the Colorado Supreme Court's order of administrative suspension and by failing to respond to the People's lawful demands for information. After considering the aggravating factors and Respondent's similar past misconduct, for which he was suspended, the Court finds disbarment is warranted.

## VI. *ORDER*

The Court therefore **ORDERS**:

1. **JAMES C. RANDOLPH**, attorney registration number 28084, is **DISBARRED**. The **DISBARMENT SHALL** take effect only upon issuance of an "Order and Notice of Disbarment." [16]

2. Respondent **SHALL** promptly comply with C.R.C.P. 251.28(a)-(c), concerning winding up of affairs, notice to parties in pending matters, and notice to parties in litigation. Respondent also **SHALL** file with the Court, within fourteen days of issuance of the "Order and Notice of Disbarment," an affidavit complying with C.R.C.P. 251.28(d).

3. The parties **SHALL** file any post-hearing motion or application for stay pending appeal with the Court **on or before September 3, 2013**. No extensions of time will be granted. Any response thereto **SHALL** be filed within seven days, unless otherwise ordered by the Court.

4. Respondent **SHALL** pay the costs of these proceedings. The People **SHALL** file a "Statement of Costs," **within fourteen days.** Respondent **SHALL** file his response to the People's statement **within seven days** thereafter.

---

**16.** In general, an order and notice of sanction will issue thirty-five days after a decision is entered pursuant to C.R.C.P. 251.19(b) or (c). In some instances, the order and notice may issue later than thirty-five days by operation of C.R.C.P. 251.27(h), C.R.C.P. 59, or other applicable rules.