**The PEOPLE of the State of Colorado, Petitioner,**

v.

**George Joseph McMAHILL, Respondent.**

**Nos. 89SA262, 89SA344.**

Supreme Court of Colorado, En Banc.

Oct. 16, 1989.

George S. Meyer, Deputy Disciplinary Counsel, Denver, for petitioner.

No appearance for respondent.

Justice MULLARKEY delivered the Opinion of the Court.

In this proceeding, we consolidated two attorney grievance cases involving the respondent, George Joseph McMahill. In each case, the Supreme Court Grievance Committee has recommended that we disbar McMahill. We placed McMahill on immediate suspension by an order dated March 9, 1989, and we now accept the committee's recommendations that he be disbarred.

## I.

McMahill was admitted to practice law in Colorado in 1954 and is subject to the disciplinary jurisdiction of this court and its Grievance Committee. McMahill defaulted in both grievance proceedings and the following facts are deemed proven by clear and convincing evidence.

The committee's recommendation of disbarment in the first case is based on McMahill's misconduct with respect to two incidents involving J. Jean Arnold and James H. Arnold and his failure to cooperate with the committee's investigation of the Arnolds' complaint. The Arnolds are a married couple who were clients and friends of the respondent for approximately thirty years. In 1987, McMahill induced the Arnolds to lend him $50,000 for investment in what McMahill described as a "million-dollar" estate for which he was the personal representative. McMahill told the Arnolds that the loan would be fully secured by a water well in Weld County known as the Chambers Well, which he claimed was valuable property in the estate of Bella Martin. After several demands by the Arnolds, McMahill provided them with a promissory note in the amount of $50,000 at seventeen percent interest. McMahill signed the note as executor on behalf of the estate of Bella Martin. McMahill also gave the Arnolds a copy of a deed of trust from the estate of Bella Martin, which he had signed as executor, conveying a security interest in real property in Weld County. This deed of trust was never recorded.

McMahill failed to pay the loan when it became due, even though the loan period was extended at his request. The committee found that McMahill used the $50,000 to pay a personal debt and that he has never repaid any part of the loan.

The Bella Martin estate was not a "million dollar" estate. Bella Martin was McMahill's aunt who had died in 1969, leaving a modest estate and naming McMahill as her executor and sole heir. The estate was closed in 1981 and, although the amended estate inventory valued the Chambers Well at $5,000, the actual value of the well was highly questionable and certainly insufficient to secure a $50,000 loan. The committee noted that the taxes on the property were two years delinquent when the deed of trust was issued by McMahill to the Arnolds.

The committee found that McMahill's conduct with respect to the $50,000 loan violated DR 1–102(A)(4) because he engaged in dishonesty, fraud, deceit, and misrepresentation. The committee also found that the respondent violated DR 5–104(A) by entering into a business transaction with a client when he had differing interests from his clients and when the clients expected him to exercise his professional

judgment for their protection. He actively deceived his clients and neither made the required full disclosure nor obtained the consent of his clients.

The second finding of misconduct involved McMahill's neglect of a personal injury action involving James Arnold, who fell and broke his hip in 1986. Arnold asked McMahill to represent him in a claim of negligence against the property owner but the respondent failed to take any action. The committee found that McMahill neglected a legal matter entrusted to him in violation of DR 6–101(A)(3) by failing to pursue Arnold's claim.

McMahill failed to cooperate with the grievance committee in its investigation of the Arnolds' complaint in violation of C.R.C.P. 241.6(7) (failure to respond to committee request without good cause). Finally, the committee concluded that the respondent's conduct in the three instances violated DR 1–102(A)(1) (violation of a disciplinary rule) and C.R.C.P. 241.6 (misconduct constituting grounds for discipline).

McMahill's misconduct in the second case is similar to that described in the first case. J.B. Trauscht was a long term client who had been represented by McMahill in various matters over a twenty-five year period. In early 1986, McMahill persuaded Trauscht to lend him $10,000 for the Thomas Kearney estate. In return, McMahill gave Trauscht a promissory note for $10,000 signed by "Estate of Thomas Kearney—Michael Kearney, personal representative." The loan was never repaid and, upon investigation, Trauscht learned that there was no Thomas Kearney estate.

The committee concluded in this case that McMahill violated DR 1–102(A)(1) (violation of a disciplinary rule), DR 1–102(A)(4) (engage in conduct involving dishonesty, fraud, deceit or misrepresentation), and DR 5–104(A) (requiring lawyer to make disclosures and obtain client consent before entering into business transactions where each has differing interests). Because McMahill failed to cooperate with its investigation and failed to notify the clerk of this court of his current address, the committee found that he violated C.R.C.P. 241.6(7) and C.R.C.P. 227(A)(2).

## II.

The respondent has filed no objection to the committee's two recommendations of disbarment and we agree that disbarment is appropriate. Disbarment is the recommended sanction under three relevant standards of the *ABA Standards for Imposing Lawyer Sanctions* (1986). Standard 4.11 states that "[d]isbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client." Standard 4.31(a) provides for disbarment when a lawyer, without the informed consent of his clients, "engages in representation of a client knowing that the lawyer's interests are adverse to the client's with the intent to benefit the lawyer or another, and causes serious or potentially serious injury to the client." Standard 4.61 states that "[d]isbarment is generally appropriate when a lawyer knowing deceives a client with the intent to benefit the lawyer or another, and causes serious injury or potentially serious injury to a client." In addition to these standards recommending disbarment, several aggravating factors are present under Standard 9.22 because McMahill had a dishonest or selfish motive, his victims were vulnerable, and a pattern of misconduct was involved. He also had over thirty years of experience practicing law and made no attempt to make restitution. No mitigating factor is present.

We have emphasized that a lawyer's theft of his client's funds destroys the attorney-client relationship and "severely damages the public's perception of attorneys and its confidence in our legal system." *People v. Wolfe,* 748 P.2d 789, 793 (Colo.1988). The harm is especially great in cases like these, where the clients reposed their friendship and trust in the attorney for many years only to find their confidence betrayed and large sums of money lost. McMahill's conduct was predatory and wholly reprehensible.

For these reasons, it is hereby ordered that George Joseph McMahill be disbarred

from the practice of law and that his name be stricken from the roll of attorneys licensed to practice in this state. It is further ordered that the respondent pay restitution in the amount of $50,000 to J. Jean Arnold and James H. Arnold and in the amount of $10,000 to J.B. Trauscht. Such restitution awards are to bear interest from the date of this order pursuant to section 5–12–106(2), 2 C.R.S. (1988 Cum. Supp.). It is further ordered that the respondent pay combined costs for the two cases in the amount of $559.91 within thirty days of the date of this order to the Supreme Court Grievance Committee, Suite 500–S, 600 17th Street, Denver, Colorado 80202–5435.