The PEOPLE of the State of
Colorado, Complainant,

v.

Kathryn A. SCHINDELAR,
Attorney–Respondent.

No. 92SA413.

Supreme Court of Colorado,
En Banc.

Feb. 1, 1993.

Linda Donnelly, Disciplinary Counsel,
James C. Coyle, Asst. Disciplinary Counsel,
Denver, for complainant.

Kathryn A. Schindelar, pro se.

PER CURIAM.

A hearing panel of the Supreme Court
Grievance Committee approved the hearing
board's recommendation that the respon-
dent in this attorney disciplinary proceed-
ing be disbarred for multiple violations of
the Code of Professional Responsibility.[1]
We accept the panel's recommendation ex-
cept as to restitution.

I

The respondent was admitted to the bar
of this court on March 10, 1976, is regis-
tered as an attorney upon this court's offi-
cial records. The respondent objected at
the hearing panel level to the hearing
board's finding that she was subject to the
jurisdiction of the grievance committee.
She claims that the board's finding of juris-
diction "ignores the fact that Respondent
did not maintain a law office in Colorado,
nor had she completed continuing education
requirements, nor paid bar dues [sic] at the
time in question. All transactions [upon
which the finding of misconduct was based]
occurred within the state of Utah, which
has chosen not to pursue the matter."[2]

■ C.R.C.P. 241.1(b) states in part, "Ev-
ery lawyer licensed to practice law in the

1. Because the conduct which is the basis for this
disciplinary proceeding occurred prior to the
effective date of the Colorado Rules of Profes-
sional Conduct, January 1, 1993, the Code of
Professional Responsibility applies.

2. The respondent also filed a document in this
court styled "Respondent's Objections to Cita-
tion," in which she claimed, inter alia, that "[n]o
subject matter exists as the alleged conduct oc-

State of Colorado is subject to the disciplinary and disability jurisdiction of the Supreme Court *in all matters relating to the practice of law."* (Emphasis added.) A lawyer licensed to practice in Colorado who has not paid the required registration fee, or who has not satisfied continuing legal education requirements, is nevertheless subject to the jurisdiction of this court and its grievance committee for the attorney's failure to comply with the Code of Professional Responsibility. *See People v. Koransky,* 830 P.2d 490, 491 (Colo.1992); *People v. Richards,* 748 P.2d 341, 343–44 (Colo. 1987).

■ Moreover, an attorney who is a member of the bar of this state must answer for her professional misconduct even if the misconduct occurs in another jurisdiction. *See People v. Breingan,* 820 P.2d 1115 (Colo.1991) (reciprocal discipline imposed on attorney in this state for misconduct which was the subject of discipline in New Jersey); *Office of Disciplinary Counsel v. Cashman,* 63 Haw. 382, 629 P.2d 105, 108–09 (1981) (as a member of the bar, attorney is fully accountable for misconduct which occurs in another jurisdiction).[3] We conclude that the respondent is subject to the jurisdiction of this court and its grievance committee.

## II

In May 1991, the hearing board entered an order of default against the respondent. This order was subsequently set aside, however, when the respondent entered an appearance by counsel and answered the formal complaint filed by the assistant disciplinary counsel. The respondent sought and received a continuance in January 1992, stating that she could not afford to travel to Colorado. Three days before the date of the rescheduled hearing, the respondent moved for another continuance, stating again that she could not afford to travel to Colorado, and asserting that she had been denied discovery because she could not afford to purchase a copy of a deposition. The hearing board denied the motion for continuance, finding the grounds insufficient, and pointing out that the respondent could have pursued alternative avenues of discovery but had not. The respondent did not attend the hearing. After listening to the testimony of the complainant's witness and considering the exhibits introduced into evidence, the board found that the following facts were established by clear and convincing evidence.

Betty Debenham of Salt Lake City, Utah, retained the respondent to act as her attorney and as the attorney for Debenham's deceased husband's estate, in late 1984. The respondent, who is a licensed attorney in Utah, received fees of approximately $12,000 for her legal services. The respondent was also appointed a personal corepresentative of the estate along with Debenham.

When she retained the respondent, Debenham was seventy-eight years of age and had relied completely on her husband to manage their business and financial matters. After her husband's death, Debenham grew reclusive and was especially vulnerable, becoming particularly dependent upon the respondent for advice. Beginning in April 1985, the respondent borrowed or

---

curred within the State of Utah, which declined the matter." These "objections" were subsequently stricken for failure to comply with C.R.C.P. 241.20(b)(4).

**3.** Rule of Professional Conduct (R.P.C.) 8.5, effective January 1, 1993, is consistent with the above analysis: "A lawyer admitted to practice in this jurisdiction is subject to the disciplinary authority of this jurisdiction although engaged in practice elsewhere." R.P.C. 8.5. The comment to R.P.C. 8.5 notes that "[i]f the rules of professional conduct in the two jurisdictions differ, principles of conflict of laws may apply." We are not presented with a conflict of law question in this case, however. The respondent was charged with violations of DR 1–102(A)(4), DR 1–102(A)(6), DR 1–5–104(A), and DR 7–101(A)(3). The same rules of professional conduct applied during the relevant time period in Utah. *See* Rules of Professional Conduct of the Utah State Bar, Rule IV, Canon 1, DR 1–102(A)(4), –102(A)(6); Canon 5, DR 5–104(A); Canon 7, DR 7–101(A)(3) (1971).

otherwise obtained money from Debenham in the principal amount of at least $73,-700.92, in the following series of transactions as reflected in the hearing board's report:

(a) On or about April 20, 1985, respondent borrowed $7,000, purportedly to provide funds to help respondent maintain telephone service to her office, which respondent said had been disconnected for nonpayment;

(b) On or about June 28, 1985, respondent borrowed an additional $25,000 from Ms. Debenham, purportedly to provide working capital for respondent and to provide Ms. Debenham with a safe, interest bearing investment;

(c) To document the first two loans, respondent drafted a promissory note. This note was secured by an Assignment of Accounts, which indicates that $12,700 would be forthcoming within sixty to ninety days of the June 28, 1985 assignment; the remainder of the Assignment of Accounts refers to three pending suits from which the respondent stated that she expected to receive proceeds, all of which were malpractice claims of respondent's family members. Respondent did not provide the original, signed notes to Ms. Debenham.

(d) On or about August 30, 1985, respondent borrowed an additional $11,-700.92 from Ms. Debenham. For this loan, respondent signed a promissory note, secured by the same Assignment of accounts dated June 28, 1985. Respondent did not provide the original, signed notes to Ms. Debenham.

(e) On or about January 1, 1986, respondent borrowed an additional $30,000 from Ms. Debenham to allegedly purchase a condominium. Respondent represented that the funds would be returned within a few days. A promissory note was eventually drafted, and secured by the same Assignment of Accounts dated June 28, 1985. The promissory note did not accurately reflect the terms of repayment agreed upon, and the origi-

nal of such note was not delivered to Ms. Debenham. Further, respondent drafted and promised to sign and deliver a mortgage to secure payment of the note. It is unknown whether such mortgage was in fact executed by respondent; however, no executed original of such mortgage was delivered to Ms. Debenham, nor properly recorded in the appropriate clerk and recorder's office. Additionally, respondent purportedly secured Ms. Debenham's interest by naming Ms. Debenham, an elderly and ailing woman, as beneficiary in respondent's will.

Debenham has not seen the respondent since January 1986, and the attorney-client relationship was terminated on or about October 26, 1986. The only payment on the total principal amount of $73,700.92 was $334, which was paid on or about July 3, 1985. No interest, costs of collection, or attorney fees for such loans have been paid.

In May 1987, Debenham, by counsel, filed a civil action in Utah against the respondent, alleging nonpayment of indebtedness, breach of fiduciary duty, fraud, and attorney malpractice. The civil action was subsequently stayed after the respondent filed for bankruptcy, and in January 1990, all loans made by Debenham to the respondent were discharged in the bankruptcy proceeding.

When the respondent obtained the loans in question, she failed to disclose to Debenham that the likelihood of repayment was remote at best. The respondent also failed to disclose, with respect to at least some of the transactions, the basis for her need for the funds, the use that would be made of the funds, the terms of repayment to be included in the promissory notes, the adequacy of the security purportedly given to secure the loans, and the adequacy of the legal documentation to protect Debenham's rights. The respondent at no time suggested that independent counsel review the terms of the loans, she did not disclose the possible conflicts of interest inherent in such transactions with her client, and De-

benham did not consent to the possible conflicts of interest.

## III

We agree with the hearing board that the respondent's failure to disclose the inadequacy of the security for the loans and the failure to provide Debenham with the appropriate legal documents to ensure repayment of the loans constitute violations of DR 1–102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation). *See People v. Tisdel*, 828 P.2d 795, 796 (Colo. 1992) (obtaining loan on representation that substantial fee is forthcoming and subsequent failure to repay loan violates DR 1–102(A)(4)); *People v. Kramer*, 819 P.2d 77, 78 (Colo.1991) (procuring loans pursuant to fraudulent "investment plans" violates DR 1–102(A)(4)).

The board also correctly determined that the respondent entered into a prohibited business transaction with her client. The respondent did not discuss the inherent conflicts of interest although Debenham expected the respondent to exercise her independent professional judgment, she did not make full disclosure to Debenham, and did not suggest that Debenham consult with independent counsel. *See* DR 5–104(A) (a lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise the lawyer's professional judgment therein for the protection of the client, unless the client has consented after full disclosure); *People v. Bennett*, 843 P.2d 1385, 1386–1387 (Colo.1993).

In addition, the respondent intentionally prejudiced or damaged Debenham during the course of the professional relationship, contrary to DR 7–101(A)(3). *Bennett*, 843 P.2d at 1387. Finally, because of the special vulnerability of the victim in this case, the respondent's conduct also violated DR 1–102(A)(6) (a lawyer shall not engage in conduct that adversely reflects on the lawyer's fitness to practice law).

## IV

A number of the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1986 & Supp.1992) (ABA *Standards*) are applicable to this proceeding. In the absence of aggravating or mitigating circumstances, disbarment is generally appropriate when, without the informed consent of the client, a lawyer "engages in representation of a client knowing that the lawyer's interests are adverse to the client's with the intent to benefit the lawyer or another, and causes serious or potentially serious injury to the client...." ABA *Standards* 4.31(a). In addition, "[d]isbarment is generally appropriate when a lawyer knowingly deceives a client with the intent to benefit the lawyer or another, and causes serious injury or potentially serious injury to a client." *Id.* at 4.61. *See also id.* at 5.11(b) (disbarment is warranted when "a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.").

This case presents significant factors in aggravation: (1) a dishonest and selfish motive, *id.* at 9.22(b); (2) a pattern of misconduct, *id.* at 9.22(c); (3) multiple offenses, *id.* at 9.22(d); (4) bad faith obstruction of the disciplinary proceedings, *id.* at 9.22(e); (5) a refusal to acknowledge the wrongful nature of conduct, *id.* at 9.22(g); (6) the vulnerability of the victim, *id.* at 9.22(h); and (7) substantial experience in the practice of law, *id.* at 9.22(i).

As in *People v. McMahill*, 782 P.2d 336 (Colo.1989), in which we disbarred the attorney because of similar misconduct, we find that the respondent's "conduct was predatory and wholly reprehensible." *Id.* at 338. Against this record, the one mitigating factor, the absence of a prior disciplinary history, is of little import. We accept the hearing panel's recommendation that the respondent be disbarred.

## V

Accordingly, it is hereby ordered that Kathryn A. Schindelar be disbarred and

that her name be stricken from the list of attorneys authorized to practice before this court, effective immediately upon the issuance of this opinion. It is further ordered that Schindelar pay the costs of this proceeding in the amount of $2,631.85 within ninety days after the announcement of this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 500–S, Dominion Plaza, Denver, Colorado 80202.

We decline to require restitution as a condition to an application for readmission.