The PEOPLE of the State of
Colorado, Complainant,

v.

Victor John BARBIERI, Respondent.

No. 99PDJ008.

Office of the Presiding Disciplinary Judge
of the Supreme Court of Colorado.

July 6, 2000.

Opinion issued by Presiding Disciplinary Judge ROGER L. KEITHLEY and Hearing Board members GUDRUN J. RICE, a member of the bar, and FRANCES L. WINSTON, a representative of the public.

## OPINION AND ORDER IMPOSING SANCTIONS

**SANCTION IMPOSED: ATTORNEY DISBARRED**

This matter was heard on January 7, 2000, before the Presiding Disciplinary Judge ("PDJ") and two hearing Board members, Gudrun J. Rice, and Frances L. Winston. Luain T. Hensel, assistant attorney regulation counsel, represented the People of the state of Colorado (the "People"). Respondent did not appear either in person or by counsel. The People's exhibits 1 through 4 were admitted into evidence. The PDJ and Hearing Board heard testimony from the People's witnesses Nancy Shapiro Adam. The PDJ and Hearing Board considered the exhibits admitted into evidence, the facts set forth in the Complaint and deemed admitted by the entry of default, assessed the credibility of the witness and made the following findings of fact which were established by clear and convincing evidence:

### I. FINDINGS OF FACT

Victor John Barbieri has taken and subscribed the oath of admission, was admitted to the bar of the Supreme Court of the State of Colorado on October 17, 1977, and is registered upon the official records of the Supreme Court, registration No. 08193. Barbieri is subject to the jurisdiction of this court pursuant to C.R.C.P. 251.1(b).

The People filed the Complaint in Case No. 99PDJ008 on January 7, 1999. Barbieri filed an Answer on March 11, 1999. The People filed the Complaint in Case No. 99PDJ061 on April 20, 1999. Although Barbieri requested and received an extension of time to Answer, no Answer to the Complaint was filed. The People sought consolidation of the two cases on April 23, 1999. Barbieri did not oppose the request for consolidation and the two matters were consolidated on May 18, 1999.

On June 28, 1999, the People filed a Motion for Default in Case No. 99PDJ061 pursuant to C.R.C.P. 251.15(b). Barbieri did not respond to the Motion for Default and on September 3, 1999 default was entered against him in Case No. 99PDJ061. On November 26, 1999, the People filed a Motion to Compel and a Motion for Sanctions in the consolidated cases alleging that Barbieri had failed to respond to written discovery and had failed to appear at his properly noticed deposition. Barbieri did not respond to the motions. The PDJ entered an order compelling Barbieri to submit written responses to the discovery and to appear for a deposition and denied the Motion for Sanctions at that time. Barbieri, notwithstanding the orders entered, neither submitted written responses to the discovery nor appeared for his deposition.

## A. Case No. 99PDJ008 The Adams Case

In or about December 1991, Nancy Shapiro Adam retained Barbieri to assist her in a dissolution of marriage proceeding. At the same time Ms. Adam was also represented in the dissolution proceeding by Langdon Jorgensen, a lawyer licensed to practice law in the state of Colorado, and was also receiving legal advice from Byron Delman, a Chicago attorney and longtime family friend and adviser. On April 27, 1993, a decree of dissolution was entered terminating the marriage, resulting in the receipt of substantial assets by Ms. Adam. Barbieri remained as counsel of record in the dissolution action and continued to represent Ms. Adam until she discharged him on February 25, 1994. During the time that Barbieri represented Ms. Adam, she was emotionally vulnerable and relied heavily upon Barbieri for both professional and personal support.

During the period of time Barbieri represented Ms. Adam, he was the majority shareholder and chief executive officer of Moroso, Inc. ("Moroso"), a company engaged in the business of excavation and construction. On or about May 14, 1993, Barbieri, knowing of her receipt of substantial assets, asked Ms. Adam to loan Moroso the sum of $150,000 for construction of a commercial building to be known as the "Titan Road Project." Barbieri prepared a note and deed of trust.

On May 24, 1993, ten days later, Barbieri went to Ms. Adam's home to discuss the requested loan. Barbieri told Ms. Adam that he estimated that the Titan Road Project would be completed in ninety days within which time permanent financing would be in place and the $150,000 loan would be repaid. Initially, Ms. Adam rejected Barbieri's proposal. Barbieri was insistent: he refused to leave Ms. Adam's home until she agreed to the loan. Once Ms. Adam reluctantly agreed to the loan, Barbieri instructed her on how to make a wire transfer of funds. Ms. Adam wired $150,000 from her brokerage account to the Moroso operating account. Barbieri personally guaranteed the loan.

Prior to the time that the loan funds were advanced, Barbieri did not provide Ms. Adam with any financial information about either himself or Moroso, did not advise Ms. Adam in writing of any conflict of interest, nor did he advise Ms. Adam to seek independent legal advice concerning the business transaction. Neither Moroso nor Barbieri had any substantial experience in the construction industry. Neither Moroso nor Barbieri had obtained bids from subcontractors regarding the project, nor had they obtained any necessary building permits.

By October 1993, the $150,000 loan was in default. In need of additional funds, Barbieri solicited another loan from Ms. Adam in the amount of $15,000. Barbieri told Ms. Adam that Moroso had secured contracts to remove snow and needed to purchase snow removal equipment. Ms. Adam agreed to loan the $15,000 to Moroso. Barbieri obtained the loan funds by means of a charge to one of Ms. Adam's credit cards which was in the possession of Barbieri's law office. Barbieri prepared a handwritten promissory note evidencing the $15,000 loan to Moroso. Barbieri did not sign the note as an officer of Moroso until February 1994, nearly four months after funds were received. The promissory note which Barbieri prepared provided no security for the $15,000 loan. As with the first loan, Barbieri failed to provide Ms. Adam with any financial information about himself or Moroso and did not advise

Ms. Adam to seek independent legal advice concerning the business transaction. Barbieri did not provide copies of the snow removal contracts for Ms. Adam's review.

By December 1993, Ms. Adam had received no cash payments on either the $150,000 loan or the $15,000 loan. She had become concerned about the repayment of the two loans. When she expressed her concerns to Barbieri, he offered to have Moroso construct a building in Avon, Colorado at cost, and convert the $165,000 debt into an equity position in Moroso. The Avon building was to be constructed of colored cinder block. Barbieri informed Ms. Adam that to insure the concrete block's timely availability, it would be necessary to place a $45,000 deposit with the concrete block company. In an effort to salvage her earlier advances of funds, Ms. Adam agreed to provide the $45,000 deposit. Barbieri prepared no documentation pertaining to the third advance of funds; there was no correspondence from Barbieri to Ms. Adam discussing the terms of the agreement or any conflict of interest, and Barbieri did not advise Ms. Adam to seek independent legal advice before entering into the business transaction. Contrary to his representations to Ms. Adam, Barbieri did not deposit the $45,000 with the concrete block company. Ms. Adam later discovered that Barbieri had used those funds to buy trucks and land in Nebraska and a vehicle for himself.

Barbieri defaulted on both of the first two loans and failed to repay any portion of the third $45,000 deposit for cinder block,[1] and did not transfer any equity interest in Moroso to Ms. Adam. In an effort to contain her losses, Ms. Adam redeemed the Titan Road Project out of foreclosure, completed construction of the project after foreclosure, and satisfied all mechanic's liens against the property. In April 1994, Ms. Adam commenced a lawsuit against Barbieri in Arapahoe County District Court, Case No. 94 CV 753. Immediately prior to trial, Ms. Adam and Barbieri reached a settlement and the case was dismissed. Barbieri made no payments under the settlement agreement. Rather, he challenged the amount due and avoided judgment upon his breach of the settlement agreement for over nine months. Eventually, after significant litigation, judgment was obtained by Ms. Adam against Barbieri in the amount of $168,553.10 plus interest.

On August 12, 1996, Barbieri filed for relief under chapter 7 of the Bankruptcy Code. Ms. Adam retained counsel and challenged Barbieri's discharge in United States Bankruptcy Court. Ms. Adam incurred $71,000 in legal fees and $5000 in expenses seeking to block Barbieri's bankruptcy discharge. Eventually, the United States District Court for the District of Colorado approved a discharge of Barbieri's indebtedness to Ms. Adam.

## B. Case No. 99PDJ061 The Burnett Case

In February 1997, Robert Burnett hired Barbieri to represent him in connection with Mr. Burnett's ex-wife's attempts to enforce a foreign decree of dissolution and maintenance order. Approximately one month later, Barbieri filed a Verified Motion to Modify Maintenance and a Response to the Petitioner's Request for Relief. Counsel for the ex-wife filed a response and a Motion to Dismiss challenging the jurisdiction of the court to modify the foreign decree. Barbieri did not respond to the Motion to Dismiss or otherwise address the jurisdictional challenge advanced in the ex-wife's pleadings. In addition, Barbieri did not inform his client that the ex-wife had challenged the jurisdiction of the court to consider the maintenance modification request submitted earlier by Barbieri.

Not long after the ex-wife filed the pleadings challenging jurisdiction, she filed three additional motions. Barbieri failed to present any responsive pleadings to those three motions. Moreover, he failed to even inform his client that the motions had been filed. On May 28, 1997, the court granted all of the motions presented by the ex-wife. The court dismissed Mr. Burnett's Motion to Modify

---

1. Barbieri made one payment against the $150,000 loan by way of an offset against Ms. Adam's legal account with his law office. That offset, in the amount of $1478.33, was never credited to Ms. Adam's account.

Maintenance, granted the ex-wife's Motion for Protective Order and authorized the ex-wife to testify at a September 25, 1997 hearing by telephone. The court limited the scheduled hearing to a determination of the amount of arrearages in support owed by Mr. Burnett. In early May 1997, Mr. Burnett tried to speak with Barbieri concerning the status of his case. Mr. Burnett's phone calls were not returned.

In late June 1997, Barbieri sent correspondence to Mr. Burnett informing him of the court's orders. Barbieri did not, however, explain to Mr. Burnett his right to appeal the court's determination, nor did he provide any advice regarding how the court order could be challenged. Upon receiving Barbieri's correspondence, Mr. Burnett tried without success to contact Barbieri. Mr. Burnett retained successor counsel. Upon entering the case, successor counsel discovered that there were outstanding discovery requests which Barbieri had never provided to Mr. Burnett. Ultimately, successor counsel was successful in convincing the court to reconsider its ruling under C.R.C.P. 60(b).

## II. CONCLUSIONS OF LAW

### A. Case No. 99PDJ008— The Adam's Case

The Complaint in Case No. 99PDJ008 alleges that Barbieri's conduct violates Colorado Rules of Professional Conduct ("Colo. RPC") 1.8(a) and Colo. RPC 8.4(a).[2] Colo. RPC 1.8(a) provides:

Conflict of Interest: Prohibited Transactions

(a) A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:

(1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client;

(2) the client is informed that use of independent counsel may be advisable and is given a reasonable opportunity to seek the advice of such independent counsel in the transaction; and

(3) the client consents in writing thereto.

During the period Barbieri had an attorney-client relationship with Ms. Adam, he induced his client to make substantial loans and advances to a corporation in which he held a majority ownership interest. He failed to fully disclose the terms of the financial arrangements in writing to his client, he failed to advise his client that the use of independent counsel might be advisable, he failed to allow sufficient time for his client to seek out and confer with independent counsel, and he failed to acquire his client's consent to the transaction in writing.

As the majority shareholder of Moroso and personal guarantor of the loan, Barbieri's financial interests were adverse to those of corporate lenders, including Ms. Adam. The existence of that adverse interest was known to Barbieri. In *People v. Bennett*, 810 P.2d 661, 664 (Colo.1991) the Supreme Court defined full disclosure in conflict of interest situations: [f]ull disclosure ... requires a clear explanation of the differing interests of the lawyer and client, the advantages of seeking independent advice, and a detailed explanation of the risks and disadvantages to the client entailed in the business agreement." *Id., citing In re James*, 452 A.2d 163, 167 (D.C.1982). Absent such disclosure, the trust inherent in the attorney-client relationship is subject to misuse by the attorney and may result in the client exercising less than normal business diligence solely because of the high level of trust placed in one's attorney.

The evidence presented to the PDJ and Hearing Board established by clear and convincing proof that Barbieri not only did not provide full disclosure in any of the three financial transactions with Ms. Adam; on the contrary, he took advantage of the trust relationship inherent in the attorney-client rela-

**2.** Colo. RPC 8.4(a) provides that "[i]t is professional misconduct for a lawyer to: (a) violate or attempt to violate the rules of professional conduct, knowingly assist or induce another to do so, or do so through the act of another."

tionship with Ms. Adam to extract business loans and monetary advances from her. Moreover, he knew she was vulnerable and dependent upon his advice and friendship. Barbieri made no effort to comply with the mandatory provisions of Colo. RPC 1.8(a), and by failing to do so caused his client to suffer serious financial harm. His misconduct constituted an egregious violation of Colo. RPC 1.8(a) and therefore a violation of Colo. RPC 8.4(a).

### B. Case No. 99PDJ061 The Burnett Case

The Complaint in this portion of the consolidated case alleges that Barbieri's conduct in connection with his representation of Mr. Burnett violated Colo. RPC 1.1[3], Colo. RPC 1.3[4], Colo. RPC 1.4(a)[5], Colo. RPC 1.4(b)[6], Colo. RPC 8.4(g)[7] and Colo. RPC 8.4(h).[8] The PDJ entered default against Barbieri on each of those charges prior to trial except the alleged violation of Colo. RPC 8.4(h). That charge was premised upon the same misconduct relied upon to support the Colo. RPC 8.4(g) charge. Colo. RPC 8.4(h) requires proof of *other* conduct independent of that prohibited by the other subsections of Colo. RPC 8.4. *See In re Thompson,* 991 P.2d 820, 824 n. 1 (Colo.1999). Neither the Complaint nor the evidence admitted at trial established any conduct supportive of the Colo. RPC 8.4(h) charge independent of the evidence relied upon to establish the Colo. RPC 8.4(g) charge. Consequently, the Colo. RPC 8.4(h) charge is dismissed with prejudice.

Although the facts established by the default indicate that Barbieri initially filed pleadings on behalf of Burnett in the dissolution and maintenance matter, he thereafter failed to respond to three separate motions filed by the opposing party, at least one of which, if granted, could foreclose his client's wishes to seek modification of prior court orders. Indeed, Barbieri didn't even inform his client of the existence of the motion. Burnett attempted to contact Barbieri to determine the status of his case and Barbieri failed to return his client's telephone calls. Ultimately, the court ruled against Burnett, at least in part due to Barbieri's neglect. Nearly a month after the adverse rulings, Barbieri wrote to his client and informed him of the court's decision, but neither explained nor counseled Burnett concerning his right to post-trial relief or his right to appeal the court's determination. Burnett's efforts to discuss the court's decision with Barbieri, like his earlier efforts to obtain information from Barbieri, were met with silence. Eventually, Burnett obtained successor counsel who was successful in convincing the court to reconsider its rulings. Successor counsel, after entering the case, discovered there were outstanding discovery requests in the Burnett file which Barbieri had not forwarded or discussed with his client.

Barbieri's failure to respond to the motions and failure to forward the outstanding discovery to his client constitute separate violations of Colo. RPC 1.3(a lawyer shall not neglect a legal matter). His failure to forward the discovery requests to his client, his failure to promptly inform his client of the court's rulings, and his failure to respond to his client's efforts to contact him constitute violations of Colo. RPC 1.4(a)(a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information). By

---

**3.** Colo. RPC 1.1 provides: "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

**4.** Colo. RPC 1.3 provides: "A lawyer shall act with reasonable diligence and promptness in representing a client. A lawyer shall not neglect a legal matter entrusted to that lawyer."

**5.** Colo. RPC 1.4(a) provides: "A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

**6.** Colo. RPC 1.4(b) provides: "A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

**7.** Colo. RPC 8.4(g) provides: "It is professional misconduct for a lawyer to knowingly engage in conduct which violates accepted standards of legal ethics."

**8.** Colo. RPC 8.4(h) provides: "It is professional misconduct for a lawyer to engage in any other conduct that adversely reflects on the lawyer's fitness to practice law."

failing to provide advice regarding his client's options regarding further proceedings following the court's rulings, Barbieri violated Colo. RPC 1.4(b)(a lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation).

The PDJ and Hearing Board are not prepared to find that the failure to respond to pleadings filed against one's client constitutes a *per se* violation of Colo. RPC 1.1. Here, however, Barbieri neither informed his client of the pleadings nor the legal principles applicable to the arguments advanced in them, and he failed to respond to the dispositive pleadings without consultation and agreement of the client. Taken together, Barbieri's actions are a clear violation of Colo. RPC 1.1. His actions do not meet the minimum level of competence required by the bar. Barbieri's failure to forward discovery requests to his client, in combination with his other professional oversights in the Burnett case, reflect a lack of skill, thoroughness and preparation minimally necessary for the legal representation of clients, and is a violation of Colo. RPC 1.1.

### III. SANCTION/IMPOSITION OF DISCIPLINE

■ The PDJ and Hearing Board find that Barbieri's misconduct constitutes a violation of duties owed to the client, the profession and the public. The ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp. 1992) ("ABA *Standards*") are the guiding authority for selecting the appropriate sanction to impose for lawyer misconduct.

ABA *Standard* 4.31(a) provides:

Disbarment is generally appropriate when a lawyer, without the informed consent of client(s):

(a) engages in representation of a client knowing that the lawyer's interests are adverse to the client's with the intent to benefit the lawyer or another, and causes serious or potentially serious injury to the client.

■ A lawyer who intentionally exploits the attorney-client relationship by acquiring an ownership, possessory, security or other pecuniary interest adverse to his or her client without adequate disclosure and meaningful consent invites disbarment. Undivided loyalty to one's client is an indispensable element of the attorney-client relationship. The relationship cannot properly exist absent the lawyer's uncompromised loyalty to the client's cause. By acquiring a financial interest adverse to one's client, a lawyer places himself or herself in the position of choosing between the best course of action for the client and benefiting the lawyer's personal financial position. It is not the lawyer's choice to make; rather, it is the client's choice. The Rules of Professional Conduct mandate that when faced with such a choice, the client must be fully informed, must have sufficient opportunity to reflect upon the proposed transaction with the assistance of independent counsel, if desired, and must evidence his or her consent in writing. Even when all of these requirements are satisfied, the lawyer must remain diligent to insure that his or her loyalty remains undivided and the client's cause is the one to which the lawyer remains committed.

Barbieri engaged in business transactions with his client, which were intended to benefit himself and his company, knowing that his personal financial interests would become adverse to those of his client upon the consummation of the transactions. By failing to comply with the mandatory requirements of notice, disclosure and writing contained in Colo. RPC 1.8(a), Barbieri deprived his client of the opportunity to effectively evaluate all of the risks and benefits of the proposed business transactions or the potential effect of the adverse interests on Barbieri's representation of Ms. Adam. His misconduct resulted in a loss to her of not less than $168,000. Additionally, she was required to expend over $76,000 in legal fees and costs, attempting to recover the funds loaned to Barbieri. Under these facts, Ms. Adam suffered serious harm. The ABA *Standards* provide that disbarment is the presumptive sanction to be imposed in order to protect the public. *See* Commentary to ABA *Standard* 4.31.

Under the ABA *Standards* disbarment is appropriate when, without the informed con-

sent of the clients, the lawyer "engages in representation of a client knowing that the lawyer's interests are adverse to the client's with the intent to benefit the lawyer or another, and causes serious or potentially serious injury to the client." ABA *Standards* 4.31(a); *In re Tolley*, 975 P.2d 1115, 1121 (Colo.1999)(*citing People v. Schindelar*, 845 P.2d 1146, 1149 (Colo.1993)(entering into prohibited loan transaction with client, failing to disclose the inherent conflicts of interest involved, and not disclosing the inadequacy of the security for the loan warranted disbarment)); *People v. Williams* 892 P.2d 885, 888 (Colo.1995)(reciprocal disciplinary proceeding disbarring attorney for, among other rule violations, failing to avoid conflicts of interest); *People v. Bennett*, 843 P.2d 1385 (Colo.1993)(attorney disbarred for, among other rule violations, borrowing money when there is conflict of interest); *People v. Turner*, 758 P.2d 1335, 1337 (Colo.1988)(attorney disbarred for fraudulently affixing another attorney's signature to a motion in order to conceal possible conflict of interest).

The misconduct found in case no. 99PDJ061, the Burnett matter, although not as severe as the misconduct in the Adam case, also suggests that disbarment or a lengthy period of suspension would be required to protect the public. *See People v. Farrant*, 883 P.2d 1 (Colo.1994)(attorney suspended for three years for neglect of clients' bankruptcy matter resulting in dismissal of Chapter 13 bankruptcy proceedings coupled with failure to respond to complaint); *People v. Odom*, 914 P.2d 342 (Colo.1996)(attorney suspended for three years for failing to keep one client informed about status of social security case and former husband's offer to increase child support, for failing to fulfill contract with client, and failing to refund $2,500 retainer); *ABA Standards* 4.41(b)(providing that disbarment is generally appropriate when a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client).

The misconduct from the two consolidated cases, when considered together, reflect a near complete absence of the necessary trustworthiness, honesty, integrity and competence which the bar demands of its members. Barbieri's conscious election not to participate in these disciplinary proceedings in any meaningful fashion, notwithstanding the mandatory provision contained in C.R.C.P. 251.5(d) that he do so, reinforces that conclusion.

■ Determination of the ultimate sanction to be imposed requires consideration of both mitigating and aggravating factors established by the evidence presented at the sanctions hearing. Barbieri's failure to participate in the hearing denies the PDJ and Hearing Board of any opportunity to consider factors in mitigation which might reduce the presumptive sanction of disbarment.

The PDJ and Hearing Board considered aggravating factors pursuant to ABA *Standards* 9.22. The evidence established numerous aggravating factors. Between 1992 and 1995, Barbieri received four letters of admonition, and in 1997 he received a public censure, all of which arose out of his neglect of client matters and his failure to keep clients adequately informed. *See* ABA *Standard* 9.22(a). Repeated prior discipline, particularly when the nature of the misconduct remains unchanged, substantially increases the weight which should be given to that aggravating factor. Repeated similar misconduct, as is present here, indicates a pattern which, in this case, is knowing and intentional. *See* ABA *Standards* 9.22(c). Barbieri's misuse of the attorney-client relationship to secure funds for a business venture to benefit himself reflects a selfish motive. *ABA Standards* 9.22(b). The extraction of those funds from a client who was vulnerable increases the seriousness of the misconduct. *See* ABA *Standards* 9.22(h). The misconduct in the Adam and Burnett cases involved multiple offenses. *See* ABA *Standards* 9.22(d). Barbieri not only has refused to acknowledge the wrongful nature of his misconduct in both the Adam and Burnett cases, he has actively attempted to shield that misconduct from resolution in the Adam matter. *See* ABA *Standards* 9.22(g). Barbieri had substantial experience in the practice of law. *See* ABA *Standards* 9.22(i).

Lastly, Barbieri failed to comply with the orders entered in this case, refused to pro-

vide information properly requested pursuant to the Colorado Rules of Civil Procedure during the preparation of this case and, by so doing, sought in bad faith to obstruct this disciplinary proceeding. The privilege of holding a license to practice law in this state carries with it an obligation to comply with the Rules of Civil Procedure. In disciplinary matters involving an attorney's conduct, compliance with unchallenged orders issued by the disciplinary body is not elective; it is mandatory. Failure to do so, almost invariably, will insure substantially enhanced discipline. Barbieri's refusal to comply with the Rules of Civil Procedure and orders issued in this disciplinary proceeding cannot be excused.

## IV. ORDER

It is therefore ORDERED:

1. That VICTOR JOHN BARBIERI, attorney registration number 08193, is DISBARRED from the practice of law effective thirty-one days from the date of this Order, and his name shall be stricken from the roll of attorneys licensed to practice law in this state.

2. Prior to the submission of any Petition for Readmission to the practice of law, Barbieri shall pay the sum of $168,553.10, plus interest at the statutory rate from the date of entry of the judgment in case no. 94CV753, Arapahoe County District Court, and the additional sum of $76,000, plus interest at the statutory rate from the date of bankruptcy discharge to Ms Adam or her designee. *See People v. Huntzinger,* 967 P.2d 160, 163 (Colo.1998).

3. Barbieri is ordered to pay the costs of these proceedings within sixty (60) days of the date of this Order.

4. The People shall submit a Statement of Costs within fifteen (15) days of the date of this Order. Respondent shall have ten (10) days thereafter to submit a response thereto.